IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation,<br><br>    *Defendant*. | Case No. 1:13-cv-8310<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Michael Grant ("Grant" or "Plaintiff") brings this class action complaint against Defendant Commonwealth Edison Company ("ComEd" or "Defendant") to stop Defendant's practice of sending unsolicited text messages to the cellular telephones of consumers and to obtain redress for all persons injured by its conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendant ComEd is the largest electric utility company in Illinois and provides electricity to nearly 4 million consumers.

2. In an effort to promote its brand, Defendant ComEd sent (or directed to be sent on its behalf) unsolicited text message advertisements to Plaintiff's and the putative Class members' cell phones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

3. Neither Plaintiff Grant, nor the other members of the Class, ever consented to

1

have Defendant send the text messages at issue to their cell phones.

4. By sending the text messages at issue, Defendant caused Plaintiff and the members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages and the monies paid to their wireless carriers for the receipt of such messages.

5. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited text message activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6. Plaintiff Michael Grant is a natural person and citizen of the State of Illinois.

7. Defendant Commonwealth Edison Company is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 440 S. LaSalle Street, Chicago, Illinois. Defendant ComEd regularly does business throughout the State of Illinois and in this District.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

9. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is incorporated in the State of Illinois and headquartered in this District, Defendant transacts significant amounts of business within this District, and the conduct and events giving rise to Plaintiff's claims arose in this District. Venue is additionally proper

because Plaintiff resides here.

## COMMON FACTUAL ALLEGATIONS

10. In recent years, companies who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

11. One of the most prevalent alternatives is through so-called Short Message Services. Short Message Services or "SMS" is a messaging system that allows for the transmission and receipt of short text message calls (usually no more than 160 characters) to and from cellular telephones.

12. SMS message calls are directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

13. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, *Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens*, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited November 18, 2013).

14. Unlike more conventional messaging systems, SMS message advertisements can actually cost their recipients money because cell phone users must pay their wireless service

3

providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

15. In or around January 2012, ComEd created the "Outage Alert" mobile messaging program.

16. According to ComEd's website, individuals who opt in to the Outage Alert program will receive text messages regarding power outages in their area.

17. There are two ways to opt in to ComEd's Outage Alert program: online or via text message.

18. To opt in online, individuals must navigate to www.ComEd.com/text and enroll by (1) entering either their ComEd account number, social security number, or phone number associated with their ComEd account, and (2) clicking the "Enroll" button.[1]

19. To opt in via text message, customers must text the phrase "ADD OUTAGE" to "26633."[2]

20. Rather than wait for individuals like Plaintiff Grant to subscribe to its Outage Alert program, ComEd unilaterally enrolled thousands of Illinois residents without their consent or permission and transmitted, or had transmitted on its behalf, the same or substantially the same text messages to them *en masse*.

21. For example, and notwithstanding that Plaintiff Grant never opted into the Outage Alert program (either online or via text message), he received the following text message from ComEd on his cell phone on or around November 7, 2013:

---

[1] *See Receive Outage Alerts on Your Mobile Phone,* ComEd, ComEd.com/text (last visited

[2] *See Get ComEd's Outage Alerts on Your Mobile Phone*, YouTube, http://www.youtube.com/watch?v=-PLcztDLf_I&list=UU4zkrEplqmoNCo32RW-Btmg&feature=player_detailpage (last visited November 18, 2013).

4

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe. HELP for info.

22. The "from" field of the text message was identified cryptically as "26633", which is an abbreviated telephone number known as an SMS short code.

23. However, Plaintiff Grant never enrolled in the Outage Alert program and never consented to receive text messages sent from or on behalf of ComEd. To be clear, at no time did Plaintiff Grant subscribe to the Outage Alert program online or send any text message to "26633" (or any other short code owned or associated with ComEd).

24. The text messages at issue were not sent for emergency purposes. Indeed, the text messages didn't provide notification of an outage or emergency of any kind.

25. Instead, the text messages at issue were sent to "maximize subscriber satisfaction."[3]

26. Defendant sent the text messages at issue to Plaintiff and thousands of putative Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

**CLASS ALLEGATIONS**

27. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class (the "Class") defined as follows: All individuals in the United States who received the following text message without providing their prior express consent:

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe. HELP for info.

---

3     *See* http://agent511.com/utility.htm (last accessed November 19, 2013).

5

28. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendant has sent text messages to tens of thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

29. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited text messages.

30. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

31. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendant's conduct constitutes a violation of the TCPA;

    (b)    whether the equipment Defendant used to transmit the text messages in question was an automatic telephone dialing system as contemplated by the TCPA; and

    (c)    whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

32. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of

this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

33. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

34. Defendant and/or its agents sent unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

35. Defendant sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

36. Defendant utilized equipment that sent the text messages to Plaintiff and other members of the Class simultaneously and without human intervention.

37.     By sending the unsolicited text messages to Plaintiff and the Class, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).  As a result of Defendant's unlawful conduct, the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited text messages on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

38.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Grant, individually and on behalf of the Class, prays for the following relief:

1.      An order certifying the Class as defined above, appointing Plaintiff Michael Grant as the representative of the Class, and appointing his counsel as Class Counsel;

2.      An award of actual and statutory damages;

3.      An injunction requiring Defendant to cease all unsolicited text message activities, and otherwise protecting the interests of the Class;

4.      An award of reasonable attorneys' fees and costs; and

5.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 19, 2013 | **MICHAEL GRANT**, individually and on behalf of all others similarly situated, |
|  | By: /s/ Ari J. Scharg<br>      One of Plaintiff's Attorneys |

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

      I, Ari J. Scharg, an attorney, certify that on November 19, 2013, I served the above and foregoing *Class Action Complaint* by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 19th day of November, 2013.

      /s/ Ari J. Scharg