UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation,<br><br>*Defendant*. | Case No. 1:13-cv-8310<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF GRANT'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Michael Grant, by and through his undersigned counsel, hereby respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3). Plaintiff further requests that the Court enter and continue the instant motion until after the completion of discovery on class-wide issues, at which time Plaintiff will submit a more fulsome memorandum of points and authorities in support of class certification.[1]

**I.   INTRODUCTION**

This matter presents a textbook case for class certification. In an effort to promote its Outage Alert text messaging program, Defendant Commonwealth Edison Company ("ComEd") sent (or directed to be sent on its behalf) thousands of unsolicited text messages to the cell

---

[1] Plaintiff filed this motion at the outset of the litigation to prevent Defendant from attempting a so-called "buy off" to moot his representative claims (*i.e.,* tendering to him the full amount of his individual damages alleged in the Complaint). *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their amended complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.").

1

phones of consumers—including Plaintiff Grant—in violation of the Telephone Consumer Protection Act, 47 U.S.C § 227 ("TCPA"). Each text message contained the same content (a statement regarding enrollment in ComEd's Outage Alert program), and each was transmitted by Defendant in the exact same manner—through the use of automated telephone dialing equipment and without the prior express consent of Plaintiff or the other members of the putative Class. Likewise, the injuries suffered by Plaintiff and the putative Class as a result of Defendant's conduct are identical. That is, each putative Class member was subjected to the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages and was required to pay monies to his/her wireless carrier for the receipt of the messages, thus entitling all Class Members to a nearly identical calculation of actual and statutory damages under the TCPA.

For these reasons, and as discussed further herein, the proposed Class meets each of the requisites to class certification under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), and the instant motion should be granted in its entirety. Notwithstanding, Plaintiff Grant respectfully requests that the Court enter and reserve a ruling on the motion until after the completion of discovery on class-wide issues, at which time he will submit a fulsome memorandum of points and authorities in support of class certification.

## II. FACTUAL BACKGROUND

### A. Facts Applicable to All Putative Class Members.

Plaintiff Grant filed his Class Action Complaint (the "Complaint") in this Court on November 19, 2013, alleging claims on behalf of himself and a class of individuals seeking relief from Defendant's violations of the TCPA. In an attempt to promote its Outage Alert program, Defendant sent (or directed to be sent) unsolicited text messages to Plaintiff's and the putative Class members' cell phones. (Compl. ¶¶ 2, 20, 23.) All of the text messages were virtually

identical, as each consisted of a message confirming an individual's enrollment in the Outage Alert program.  (*Id.* ¶ 25.)

According to ComEd's website, individuals who opt in to the Outage Alert program will receive text messages regarding power outages in their area.  (*Id.* ¶ 16.)  There are two ways to opt in to ComEd's Outage Alert program: online or via text message.  (*Id.* ¶ 17.)  To opt in online at www.ComEd.com/text, individuals must enroll by (i) entering either their ComEd account number, social security number, or phone number associated with their ComEd account and (ii) clicking "Enroll."  (*Id.* ¶ 18.)  To opt in via text message, customers must text the phrase "ADD OUTAGE" to "26633."  (*Id.* ¶ 19.)

Defendant did not, however, obtain Plaintiff's and the other putative Class members' express consent to receive the text messages prior to sending them.  (*Id.* ¶¶ 3, 20, 25, 32.)  That is, rather than wait for individuals to opt in to the text messaging program by providing their ComEd account numbers, social security numbers, or phone numbers linked with their ComEd account and clicking "Enroll" on ComEd's website, or by sending "ADD OUTAGE" to "26633", Defendant unilaterally opted thousands of Illinois residents into its program without their express consent or permission.  (*Id.* ¶¶ 18–20.)

Furthermore, Defendant sent the text messages to Plaintiff and the Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.  (*Id.* ¶¶ 24, 33.)

**B.     Facts Applicable to Plaintiff Grant.**

Plaintiff Grant is just one of thousands of consumers who received an unsolicited text message from Defendant.  (*Id.* ¶¶ 20–21.)  Specifically, on November 7, 2013, Plaintiff's cell phone received the following text message from the SMS short code "26633":

3

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit
> ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe.
> HELP for info.

(*Id.* ¶¶ 21–22.) At no time, however, did Plaintiff ever provide his ComEd account number, social security number, or phone number associated with his ComEd account or click "Enroll" on Defendant's website, nor did he text "ADD OUTAGE" to "26633" or otherwise provide consent to receive such text message calls from ComEd. (*Id.* ¶ 23.)

### C. The Proposed Class.

As a result of Defendant's conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of a class (the "Class"), defined as follows: All individuals in the United States who received the following text message without providing their prior express consent:

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit
> ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe.
> HELP for info.

(*Id.* ¶ 25.) As demonstrated below, the proposed Class meets each of Rule 23's requisites to certification, and therefore, the instant motion should be granted in its entirety.

### III. THE PROPOSED CLASS SATISFIES EACH OF THE REQUIREMENTS FOR CERTIFICATION.

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or his counsel have and will continue to adequately

represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification of the proposed Class under both Rule 23(b)(2) and 23(b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate...." Fed. R. Civ. P. 23(b)(2). Similarly, in order to certify a class under Rule 23(b)(3), (i) questions of law or fact common to the proposed class members must predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974). As such, "for purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated." *Anderson v. Cornejo*, 199 F.R.D. 228, 237 (N.D. Ill. 2000). Thus, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties, with a presumption in favor of certification. *Id*.

### A. The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor are the plaintiffs required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC,* No. 03-cv-1995, 2004 WL 719278, at *2

(N.D. Ill. Mar. 31, 2004).

Here, the Court need not rely on its assumptive abilities, as Plaintiff alleges—and discovery will show—that Defendant has sent unsolicited text messages to thousands of individuals. (Compl. ¶¶ 20, 24, 26, ); *see also Heastie Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) (classes numbering in the thousands "clearly" satisfy the numerosity requirement); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, 243–46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met."). Accordingly, the proposed Class satisfies the numerosity requirement.

**B.     The Commonality Requirement is Satisfied.**

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is present where a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l Servs. Inc.*, No. 00-cv-6080, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (internal

quotations omitted). The question of commonality is a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

The claims of Plaintiff and the Class in this case are based upon the same common contention: that ComEd violated the proscriptions of the TCPA by sending unsolicited text messages to their cell phones, despite the fact that they did not authorize it to do so. (Compl. ¶¶ 3, 20, 25, 32.) Defendant sent the text messages systematically and its conduct affected Plaintiff and the Class members in a virtually identical manner (*i.e.* subjecting them to the aggravation and usage fees associated with the receipt of such messages). (*Id.* ¶¶ 4, 24, 32–34.) Moreover, Defendant's unlawful conduct will be proven through the use of common and generalized evidence applicable to the Class as a whole.

Defendant's conduct gives rise to several factual questions common to all Class Members, including: (i) whether Defendant sent the text messages in question using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, and (ii) whether Defendant obtained proposed Class members' consent to send the text messages. (Compl. ¶¶ 29, 32–34.) Those common factual questions lead to several legal questions common to both the Plaintiff and the Class, including: (i) whether by sending the text messages in question Defendant violated the proscriptions of the TCPA, and (ii) whether the Class members are entitled to statutory damages as a result of Defendant's alleged conduct. (*Id.* ¶¶ 29, 35–36.)

Accordingly, the commonality requirement is met.

### C. Plaintiff's Claims are Typical of the Class.

Typicality, the next requirement under Rule 23, requires that Plaintiff's claims be typical of those of the other Class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is

closely related to the commonality requirement and is satisfied if Plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and…are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). Nevertheless, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "[s]imilarity of legal theory is more important than factual similarity. . . ." *Id.* (quoting *Harris v. City of Chicago,* Nos. 96-cv-2406, 96-cv-7526, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

In this case, Plaintiff and the proposed Class members were each subject to Defendant's common course of conduct. That is, they each received one or more text messages from Defendant despite the fact that they did not authorize Defendant to send the text messages. Further, as a result of Defendant's conduct, Plaintiff and the other members of the Class suffered substantially the same harm in the form of the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages and were each required to pay monies to their wireless carriers for the receipt of the messages, thus entitling them to an identical calculation of statutory damages under the TCPA. (Compl. ¶¶ 4, 25.) As such, by pursuing his own claims, Plaintiff will necessarily advance the interests of the proposed Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

**D.    The Adequacy of Representation Requirement is Satisfied.**

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires that both a proposed class representative and its counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278, at *5.

The proposed class representative must not have claims that are "antagonistic or conflicting…with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims, and it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

In this case, Plaintiff Grant has the same interests as the other members of the Class. He received an unauthorized text message from Defendant on his cell phone as a result of its uniform course of unlawful conduct. (Compl. ¶¶ 20–21.) Therefore, like the other members of the Class, his interests lie in ensuring that Defendant's unlawful conduct does not continue in the future and that he and the other members of the Class recover the statutory damages and injunctive relief to which they are entitled. (*Id.* ¶¶ 28, 35–36.) Plaintiff also has no interests antagonistic to those of the Class. (*Id.* ¶ 28.)

Likewise, proposed Class Counsel and the lawyers at Edelson LLC have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. They regularly engage in major complex litigation involving mobile technologies, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (See Firm Resume of Edelson LLC, attached hereto as Exhibit 1); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379-EJD (Dkt. 59) (N.D. Cal. 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in

electronic privacy litigation and class actions, renders them superior to represent the putative class"); *Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (Dkt. 186) (N.D. Ill. Apr. 2, 2013) (achieving adversarial certification in the largest-ever privacy class action).

Most importantly, proposed Class Counsel "have pioneered the application of the TCPA to text-messaging technology" and have litigated "some of the largest consumer class actions in the country on this issue." *Ellison v. Steve Madden*, No. 11-cv-05935 (Dkt. 73, at 9) (C.D. Cal. May 7, 2013); *see also Miller v. Red Bull*, No. 12-cv-04961 (N.D. Ill. Aug. 12, 2013) (appointed class counsel in nationwide class action settlement of TCPA claims); *Lozano v. Twentieth Century Fox Films Corp.*, No. 09-cv-6344 (N.D. Ill. Apr. 15, 2011) (same). As they did in those cases, proposed class counsel have already diligently investigated and dedicated substantial resources to the investigation of the claims at issue in this action, and they will continue to do so throughout its pendency.

    **E.**    **The Proposed Class Meets the Requirements of Rule 23(b)(2).**

Once the prerequisites of Rule 23(a) are satisfied, one of the three subsections of Rule 23(b) must be satisfied. Here, Plaintiff seeks certification of the proposed Class under Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate. . . ." *Brown v. Yellow Transp., Inc.*, No. 08-cv-5908, 2011 WL 1838741, at *2 (N.D. Ill. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class, like the whole of Rule 23, is to be "liberally construed so as to favor the maintenance of class actions where appropriate." *Yellow Transp.*, 2011 WL 1838741, at *2 (citing *In re Evanston Nw.*

*Healthcare Corp. Antitrust Litig.,* 268 F.R.D. 56, 60 (N.D. Ill. 2010)); *see also King v. Kansas City Southern Indus.,* 519 F.2d 20, 26 (7th Cir. 1975)). Where a court finds that Rule 23(a)'s commonality requirement is met, the court should typically also find that the plaintiff has shown that the defendant acted on grounds generally applicable to the class as a whole. *See Lemon v. Intl. Union of Operating Engineers, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Yellow Transp.*, 2011 WL 183871, at *7.

There should be no question that Defendant acted on grounds generally applicable to the Class as a whole. Defendant sent virtually identical text messages to the cellular telephones of each of the putative Class members without their consent. (Compl. ¶¶ 2–4, 25, 32.) Defendant used the same automatic telephone dialing system to transmit the messages and obtained Plaintiff's and the Class's cellular phone numbers in the same unauthorized ways—namely, by unilaterally enrolling thousands of individuals into its Outage Alert program. (*Id.* ¶¶ 20, 24, 33–34.) Defendant's conduct did not vary from Class member to Class member and therefore, final injunctive relief is necessary to protect Plaintiff and the Class from such unlawful conduct in the future.

The requirements of Rule 23(b)(2) are satisfied.

### F.  The Proposed Class Also Meets the Requirements of Rule 23(b)(3).

Plaintiff also seeks certification of the Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331–32 (N.D. Ill. 2006). As discussed below, this case easily meets both of these requirements.

i. Common Questions of Law and Fact Predominate.

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation." *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Duke*, 131 S. Ct. at 2566). The inquiry requires courts to identify 'the substantive issues that will control the outcome, assess[] which issues will predominate, and then determine whether the issues are common to the class." *Id.* (citing *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006)) (internal quotations omitted).

Here, the claims of Plaintiff and the other members of the Class all arise from Defendant's standardized conduct of sending unauthorized text messages to their cellular telephones, using the same automatic telephone dialing equipment to do so, and having obtained their phone numbers through the same means. (Compl. ¶¶ 2–4, 20, 24, 32–34.) Thus, the common questions described in section III.B, *supra*, predominate over any issues affecting only individual Class members (*e.g.*, the total number of messages received by each individual Class member). Moreover, the evidence necessary to prove Plaintiff's and the Class's claims— including evidence of the content of the text messages, how Defendant transmitted the messages, to what phone numbers they were sent, and how Defendant obtained those phone numbers—will come from within Defendant's own records rather than from individual Class members themselves. Thus, the only claim at issue in this case—Defendant's violation of the TCPA— presents numerous common and predominant issues for the Class and is subject to generalized proofs. As such, the predominance requirement is also satisfied.

ii. The Class Action Mechanism is Superior to Other Available Methods for the Litigation of this Matter.

Rule 23(b)(3) further requires that the class action mechanism be superior to the other

available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3); *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class's claims.

Absent class treatment in this case, each individual member of the Class would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Furthermore, class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality.

Accordingly, the superiority requirement is satisfied as well.

## IV. CONCLUSION.

For the foregoing reasons, Plaintiff Michael Grant, individually and on behalf of the proposed Class, respectfully requests that the Court

1.  Enter and reserve ruling on his Motion for Class Certification;

2.  Allow for and schedule discovery to take place on class-wide issues;

3.  Grant Plaintiff leave to file a memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery;

4.  Grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and

5. Provide all other and further relief that the Court deems equitable and just.[2]

Respectfully submitted,

Dated: November 19, 2013

**MICHAEL GRANT**, individually and on behalf of all others similarly situated,

By: /s/ Ari J. Scharg
     One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370

*Counsel for Plaintiff and the Putative Class*

---

[2] Plaintiff respectfully reserves the right to amend the putative Class definition at the conclusion of class-wide discovery, subject to Court approval.

## CERTIFICATE OF SERVICE

       I, Ari J. Scharg, an attorney, certify that on November 19, 2013, I served the above and foregoing ***Plaintiff Grant's Motion for Class Certification***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system on this the 19th day of November, 2013.

                                        /s/ Ari J. Scharg