IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation,<br><br>*Defendant*. | Case No. 1:13-cv-8310<br><br>Hon. Gary S. Feinerman |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Defendant Commonwealth Edison Company ("ComEd") does not and cannot dispute that Plaintiff Michael Grant's class action complaint (the "Complaint") sufficiently alleges that ComEd (1) sent text messages (2) using an automatic telephone dialing system (3) to Plaintiff's and other consumers' cell phones. Those allegations state a claim for relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and for that reason alone, ComEd's Rule 12(b)(6) Motion to Dismiss should be denied.

Instead of accepting that Plaintiff has clearly pleaded facts plausibly showing a TCPA violation, however, ComEd resorts—in clear disregard of Rule 12(b)(6)—to making factual assertions outside of the Complaint, and then to claiming that those "facts" show (1) that Mr. Grant consented to receive the text message at issue from ComEd, and (2) that the text message at issue falls within an emergency purposes exception to the TCPA. As explained below, however, both consent and the emergency exception are affirmative defenses that are unsupported by either the allegations in the Complaint or ComEd's improperly asserted additional "facts." Plaintiff did not provide "prior express consent" to receive the text message as

1

required by the TCPA and binding FCC authority, nor was the text message sent in an impending or current emergency. Consequently, ComEd's Motion to Dismiss should be denied.

I. **THE FACTS ALLEGED BY PLAINTIFF AND THE "FACTS" WRONGLY ADDED BY COMED.**

In an effort to argue that the text messages it transmitted did not violate the TCPA, ComEd's Motion to Dismiss not only ignores the facts as pleaded in the Complaint, but improperly asserts a multitude of information well outside the pleadings in order to bolster its own fact-laden arguments. To correct the distorted picture ComEd attempts to paint about its unauthorized texting, Plaintiff sets out below both the facts alleged in the Complaint—which must be taken as true, *see Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013)—and the "facts" asserted by ComEd—which may not be considered on a motion to dismiss, *see Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996).

First, the allegations from the Complaint: In January 2012, ComEd created the "Outage Alert" text messaging program "in an effort to promote its brand" and "to maximize subscriber satisfaction." (Compl. ¶¶ 2, 15, 25, n. 3.)[1] One aspect of the Outage Alert program is to send—to those who choose to participate in the program—text messages regarding power outages in their area. (*Id.* ¶ 16.) There are two ways to enroll in the program: online through ComEd's website, or via text message by texting "ADD OUTAGE" to ComEd. (*Id.* ¶¶ 17-19.) Despite offering two ways to opt in to the program, however, ComEd unilaterally enrolled thousands of Illinois

---

[1] According to www.agent511.com/utility.htm, (cited in Compl. ¶ 25, n.3), the Outage Alert program was designed to "open new channels to customer communications . . . to achieve the highest satisfaction ratings, and consequently, best ratings of credit worthiness." In addition, the Outage Alert program "is integrated with eBill solutions" that includes the transmission of text messages about overdue payments and a "work-out schedule." (*Id.*) This Court may consider agent511's website because Plaintiff relied upon it in framing the complaint. *See, e.g.*, *In re Corus Bankshares, Inc.*, 503 B.R. 44, 46 (N.D. Ill. 2013).

residents in the program without their consent or permission. (*Id.* ¶ 20.)[2] As part of that unilateral, unconsented-to enrollment, ComEd sent the following text message to Plaintiff and thousands of others on or around November 7, 2013 from vanity SMS shortcode "26633:"[3]

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe. HELP for info.

(*Id.* ¶¶ 21, 26.) The equipment used to send these messages through SMS shortcode 26633 was able to send these messages simultaneously to thousands of people without human intervention. (*Id.* ¶¶ 20-21, 34-36.) Plaintiff did not consent to receive this (or any other) text message from ComEd (*Id.* ¶¶ 3, 20, 21, 23, 34), nor was the message sent for an emergency purpose. (*Id.* ¶¶ 21, 24-25.)

While the above facts are pleaded in the Complaint (and, as explained below, are sufficient to state a claim), ComEd makes—and then relies upon—the following additional factual assertions outside the Complaint. These "facts," (often with misleading references to the Complaint) are *not* alleged in the Complaint or implicated in any way by the allegations:

- Recent extreme weather and accompanying power outages drove ComEd to improve the speed and efficiency of its communications with customers, particularly those concerning power outages, by using text messaging. (Mem. Supp. Def. Mot. Dism. at 1, 6 n.3);

- The Outage Alert program was a two-way text messaging program where customers could report power outages to ComEd by text and to receive power outage information quickly. (*Id.* at 1, 13);

- "In the fall of 2013, and in advance of what has turned out to be an unprecedented winter storm season, ComEd rolled the Program out as part of ComEd's standard electric service to all of its customers who provided cell phone numbers as a point of contact." (*Id.* at 1);

---

[2] While the complaint alleges only that the text message was sent to "thousands" of consumers, (Compl. ¶¶ 20, 28), ComEd admits that it sent the text message to approximately 1.2 million consumers (Mem. Supp. Def. Mot. Dism. at 4).
[3] The SMS shortcode here, 26633, translates to "ComEd" on a telephone keypad, and is an abbreviated telephone number that allows for the rapid mass transmission of text messages.

3

- The Outage Alert program "keep[s] the public informed of critical updates" and "communicat[es] such information by a distinctly efficient and effective means." (*Id*. at 5);

- The Outage Alert program provides "important, potentially life-saving information," and "millions of ComEd customers [are] helped by the outage alert text messages." (*Id*. at 6);

- Absent an introductory text message, "customers might well have been unaware of the Program" and "confused and/or uncertain about the authenticity of outage alerts delivered under the Program." (*Id*. at 14-15);

- Plaintiff unsubscribed from the Outage Alert program a few hours after he received the text message on November 7, 2013. (*Id.* at 1);

- "Plaintiff . . . provid[ed] his cell phone number as his primary point of contact." (*Id.* at 2);

- Plaintiff "[gave] his cell phone number to ComEd as his primary point of contact." (*Id*.);

- Plaintiff "voluntarily gave his wireless number to ComEd as his primary contact information in establishing an account to receive electric power service." (*Id*. at 10);

- ComEd began to include subscription into the Outage Alert program as part of its standard electric service that it provides to customers on an "opt-out" basis. The Program was therefore rolled out to all customers who had previously provided ComEd with a cell phone number as a point of contact regarding their electric service. (*Id.* at 14); and

- Before sending any text messages to these customers, ComEd also sent each of them a letter or email describing the Program and offering an opportunity to opt-out of receiving the outage alerts. (*Id.* at 14 n.7).

While the Court may not properly consider these additional "facts" on a motion to dismiss, at the end of the day, even these additional "facts" do not establish ComEd's affirmative defenses.

**II. THE COMPLAINT SUFFICIENTLY ALLEGES A TCPA VIOLATION.**

"A complaint states a claim on which relief may be granted when it narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *U.S. Gypsum v. Ind. Gas. Co.*, 350 F.3d 623, 626 (7th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Here, the

Complaint does precisely that by alleging facts sufficiently showing ComEd violated the TCPA.

Under the TCPA, it is unlawful "to make any call (other than a call made for emergency purposes or with the prior express consent of the called party) using an automatic telephone dialing system ["ATDS"] . . . to any telephone number assigned to a . . . cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. 47 U.S.C. § 227(a)(1); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd 15391, 15392 n.5 (2012) ("The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."). A text message is a call under the TCPA. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C. Rcd 14014, 14115 (2003) (ruling that the TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls"); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("[T]he Court agrees with the FCC's interpretation that § 227 of the TCPA applies to text messages").

As such, all that is needed to state a claim for a TCPA violation are allegations that a defendant: (1) made text message calls, (2) using an ATDS, (3) to a telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). ComEd does not, and cannot, dispute that Plaintiff sufficiently alleged ComEd made text messages calls (Compl. ¶¶ 2, 20, 21, 33), using an ATDS (*Id.* ¶¶ 2, 21, 26, 34-36), to cell phones (*Id.* ¶¶ 2-4, 21, 34). At the pleading stage, courts routinely find such allegations sufficient, *see Birchmeier v. Caribbean Cruise Line,*

*Inc.*, No. 12-cv-4069, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012), and for this reason alone ComEd's motion should be denied.

### III. COMED'S ASSERTION OF AFFIRMATIVE DEFENSES IS INUSFFICIENT TO WARRANT DISMISSING THE COMPLAINT.

While ComEd does not dispute that Plaintiff has alleged that it sent text messages to cell phones using an ATDS, it nevertheless argues that the Complaint should be dismissed because, ComEd claims, the text messages it sent fall within both the prior express consent and emergency purposes exceptions to the TCPA. ComEd is wrong, however, because both of these claimed exceptions are affirmative defenses, which are inappropriate grounds for dismissal on a Rule 12(b)(6) motion. As the Seventh Circuit has explained:

> [C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses. Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim. The mere presence of a potential affirmative defense does not render the claim for relief invalid.

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). While an exception exists where the complaint sets forth everything necessary to satisfy the affirmative defense, *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), the Complaint here does not do so. Nor, assuming they can even be considered here, do the additional "facts" asserted by ComEd. Consequently, ComEd's motion to dismiss, relying on affirmative defenses (which are meritless in any event), must be denied.

#### A. Consent and Emergency Purposes Are Statutory Affirmative Defenses; Plaintiff Need Not Plead their Absence.

Plaintiffs are not required to plead the absence of affirmative defenses in order to state a

claim for relief. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) (noting "the norm that complaints need not anticipate or meet potential affirmative defenses"). That consent and emergency purposes are affirmative defenses—rather than the lack thereof being elements of a prima facie TCPA claim—is evident from their placement in the statutory text within a parenthetical exception to the otherwise general prohibition on calls made with an ATDS. *See* 47 U.S.C. § 227(b)(1)(A) (prohibiting the making of "*any* call (*other than* a call made for emergency purposes or with the prior express consent of the called party) [using an ATDS]") (emphasis added). It is a "familiar principle that when a proviso carves an exception out of the body of a statute . . . those who set up such exception must prove it." *Meachem v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) (internal quotation omitted); *see also EEOC v. Chicago Club*, 86 F.3d 1423, 1429 (7th Cir. 1996) ("It is a commonly accepted cannon that one who claims the benefit of an exception from the prohibition of a statute has the burden of proving that his claim comes within the exception.") (internal quotation omitted).

While some courts have listed "lack of prior express consent" as an element of a TCPA claim,[4] the overwhelming majority of courts to analyze the question have concluded it is an affirmative defense that the defendant has the burden of establishing. *See, e.g., Charvat v. Allstate Corp.*, --- F. Supp. 2d ---, 13-cv-7104, 2014 WL 866377, at *1 (N.D. Ill. Mar. 5, 2014) ("[T]he prevailing view in this district is that 'prior express consent' under the TCPA is an

---

[4] *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013), cited by ComEd for the elements of a TCPA cause of action, is one such case. But while consent and emergency purposes are listed in the same parenthetical exception, *Hanley* does not state that lack of emergency is an element of a TCPA claim or explain why lack of consent should be considered an element of a TCPA claim while lack of emergency is not. Further, even if lack of consent *were* an element of a prima facie TCPA claim that must be alleged, Plaintiff expressly did so, specifically alleging that he "never consented to receive text messages sent from or on behalf of ComEd." (Compl. ¶ 23; *see also id.* ¶ 3 ("Neither Plaintiff Grant, nor the other members of the Class, ever consented to have Defendant send the text messages at issue to their cell phones.").)

affirmative defense on which the defendant bears the burden of proof; it is not a required element of the plaintiff's claim"); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *Robbins v. Coca-Cola Co.*, No. 13-cv-132, 2013 WL 2252646, *2 (S.D. Cal. May 22, 2013) ("Whether Plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved by a TCPA defendant . . . , and is not an element of Plaintiffs' TCPA claim.") (internal quotation omitted); *Manfried v. Bennett Law, PLLC*, No. 12-cv-61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012) ("[P]rior express consent is an affirmative defense, not an element of the claim."). More importantly, as explained below, the FCC has held that "should any question about the consent arise, the [caller] will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd 1830, 1844 (2012).

**B. ComEd Has Not (and Cannot) Establish its Affirmative Defenses.**

Because prior express consent and emergency purposes are affirmative defenses, dismissal on those grounds is inappropriate unless the Complaint sets forth everything necessary for ComEd to prevail on those defenses. *Lewis*, 411 F.3d at 842; *Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1051 (N.D. Ill. 2011) ("Dismissal on the basis of an affirmative defense is only appropriate if plaintiff pleads facts that establish all of the elements of that defense."). Because Plaintiff's complaint does not set forth *any* facts that would allow ComEd to prevail on either of its affirmative defenses, ComEd decided to simply make—and then rely on—factual statements not alleged in the Complaint that fit its arguments. This it cannot do. *See*

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint."). In any event, even if the "facts" improperly asserted by ComEd were true, their affirmative defenses are still without merit.

> **1. The Complaint Does Not Set Forth Facts Establishing the Affirmative Defense of Prior Express Consent, Nor Can ComEd Assert Such Facts.**

As noted above, Plaintiff expressly alleges that he did not consent to receive text messages from ComEd. (Compl. ¶¶ 3, 23.) Despite these express allegations, however, ComEd nevertheless argues that Plaintiff consented to receive the text message at issue because he provided his cell phone number to ComEd. The problem with ComEd's argument is that Plaintiff never alleges that he provided his number to ComEd. Indeed, there is no allegation at all regarding how ComEd obtained his cell phone number. While ComEd repeatedly asserts in its brief that Plaintiff voluntarily provided his cell phone number to ComEd, the one place that assertion will not be found is the one place it needs to be for this Court to consider it: the Complaint. Where a complaint does not allege the elements necessary to establish an affirmative defense, the complaint may not be dismissed on that ground. *See, e.g., Gandhi v. Sitara Capital Mgmt., LLC*, 689 F. Supp. 2d 1004, 1009 (N.D. Ill. 2010) (denying motion to dismiss securities claim on affirmative defense that security was offered to less than 35 investors where complaint did not allege the number of investors to whom the security was offered).

ComEd's misunderstanding of Rule 12(b)(6) is further evidenced by its citation to what it describes as an "overwhelming majority" of opinions supposedly supporting its invocation of the consent defense. (Mem. Supp. Def. Mot. Dism. at 8-10.) Five of the eight cases cited by ComEd resolved *summary judgment* motions, where there was an undisputed factual record of the

9

circumstances in which plaintiffs had provided their phone number to defendant. *See Greene v. DirectTV, Inc.*, No. 10-cv-117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010); *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 467-68 (E.D.N.Y. 2012); *Ryabyshchuck v. Citibank (S.D.) N.A.*, No. 11-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre Inc.*, No. 13-cv-999, 2014 WL 320205, at *2 (C.D. Cal. Jan. 28, 2014); *Roberts v. PayPal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *3-5 (N.D. Cal. May 30, 2013). Two of the eight cases cited by ComEd, while resolving motions to dismiss, involved—unlike here—*express allegations in the complaint* of the circumstances in which plaintiffs had provided their phone numbers to defendants. *See Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2014 WL 518174, at *1 (N.D. Ill. Feb. 10, 2014); *Pinkard v. Wal-Mart Stores, Inc.*, No. 12-cv-02902-CLS, 2012 WL 5611039, at *2 (N.D. Ala. Nov. 9, 2012). Finally, the last case cited by ComEd, *Martin v. Comcast Corp.*, No. 12-cv-6421, 2013 WL 6229934, at *4-5 (N.D. Ill. Nov. 26, 2013), actually supports *Plaintiff's* position. In *Martin*, the court *denied* a defendant's motion to dismiss a complaint because a fact question existed regarding whether plaintiff had provided his cell phone number to defendant. Indeed, like here, the plaintiff in *Martin* had pointed out in response to the motion to dismiss that "[t]here is nothing in the complaint to support [defendant's] bald assertion that plaintiff 'provided his wireless number to [defendant] as his primary contact information.'" *Id.* at *4.

ComEd's assertion of the prior express consent affirmative defense rests entirely on the premise that Plaintiff provided his cell phone number to ComEd as his primary point of contact with respect to his electric service. But because that premise is a factual statement coming solely from unsupported assertions in ComEd's brief, rather than the allegations in Plaintiff's complaint (a complaint in which he expressly alleges that he did *not* consent to receiving text messages),

10

the affirmative defense cannot support dismissal under Rule 12(b)(6). *See, e.g., Thrasher-Lyon*, 861 F. Supp. 2d at 905 (denying motion to dismiss TCPA claim on affirmative defense of consent where "four corners of Plaintiff's complaint" alleged that defendant did not have consent); *Connelly v. Hilton Grant Vacations Co., LLC*, No. 12-cv-599, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012) ("Plaintiffs' [TCPA] complaint need not allege the absence of consent, and accordingly, a motion for summary judgment—rather than a motion to dismiss—is the proper place for the defendant to establish that the Plaintiffs' claim fails due to the presence of prior express consent.") (internal quotations omitted).

### 2. Even if Plaintiff Had Alleged that He Provided His Cell Phone Number to ComEd, that Provision Is Not Consent to Receive Text Messages.

Even if it were true that—as asserted by ComEd but not alleged in the Complaint—Plaintiff provided his cell phone number to ComEd as his primary contact number, that provision does not constitute prior express consent to receive text messages from ComEd. In support of its position, ComEd argues that a 1992 FCC Order regarding prior express consent is a "governing interpretation of the TCPA." (Mem. Supp. Def. Mot. Dism. at 10.) ComEd is half-right: FCC final orders are binding on district courts,[5] but it is a 2012 FCC order—not the 1992 order—that provides the "governing interpretation" of what constitutes prior express consent.[6]

---

[5] *See, e.g., CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010) "[T]he Hobbs Act prevents the district court from reviewing the validity of FCC regulations . . . ."; *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 97 (N.D. Ill. 2013) ("This Court is . . . bound by the FCC's orders, which are final and controlling.") (citing Hobbs Act and *CE Design*).

[6] In addition, ComEd is equally mistaken about what the 1992 FCC Order actually requires for there to be prior express consent. That order addressed only the idea that a business might face liability under the TCPA where it simply responded to inbound customer calls, but had not yet had an opportunity to obtain consent to return those calls. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992). In that context alone, the FCC reached the logical conclusion that a consumer who contacts a business and provides a phone number where they can be reached does so "with the

11

On February 15, 2012, the FCC issued a Report and Order setting forth a revised rule as to, *inter alia*, what constitutes prior express consent sufficient for a company to make autodialed calls or send text messages to cell phones after October 16, 2013. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd 1830, 1838-44, 1856-57 (2012) (the "2012 FCC Order"). Pursuant to the 2012 FCC Order, prior express *written* consent is required for all autodialed telemarketing calls to cell phones. *Id*. at 1838. The 2012 FCC Order does not require written consent for autodialed *non*-telemarketing (*e.g.*, informational and noncommercial) calls to wireless numbers; prior express oral consent is sufficient. *Id.* at 1841.[7]

Thus, should discovery determine that the Outage Alert program, rolled out on November 7, 2013, and subject to the new FCC rules, was—as alleged by Plaintiff—indeed part of an effort to bolster customer satisfaction in the face of increased competition (or included planned billing applications), then Plaintiff's consent to receive the text message must have been written, signed, and unambiguously agreeing—after a "clear and conspicuous disclosure" by ComEd—to receive text messages at the phone number provided. 2012 FCC Order at 1844. Further, the entry into

---

expectation that the party to whom the number was given will return the call" and, therefore, "ha[s] in effect given [his] invitation or permission to be called at the number which they have given." *Id*. Furthermore, as one court in this District recently held:

> [b]izarre would be to read "express consent" as "implied consent." In ordinary parlance, there is no such thing as "implied express consent"—that is an oxymoron. Giving out one's phone number, at least outside of the special relationship sanctioned by the FCC, is not "express" consent to besiegement by automated dialing machines. One "expresses" consent by, well, expressing it: stating that the other party can call, or checking a box on form or agreeing to terms of service that explicitly permit automated telephone contact . . . . "Express" connotes a requirement of specificity, not "general unrestricted permission" inferred from the act of giving out a number.

*Thrasher-Lyon v. CCS Commercial, LLC*, 2012 WL 3835089, at *5 (N.D. Ill. Sept. 4, 2012).
[7] The FCC "[left] it to the caller to determine, when making an autodialed or prerecorded non-telemarketing call to a wireless number, whether to rely on oral or written consent in complying with the statutory consent requirement." 2012 FCC Order at 1842.

any agreement or provision of the cell phone number (directly or indirectly) could not have been conditioned upon the receipt of ComEd's services. *Id.* Neither the facts alleged in the Complaint nor the "facts" improperly introduced by ComEd remotely establish that this standard was met, and dismissal on Rule 12(b)(6) grounds is therefore improper.[8]

### 3. The Complaint Does Not Set Forth Facts Establishing an Emergency Purposes Affirmative Defense.

As with prior express consent, ComEd's assertion of the emergency purposes affirmative defense likewise fails because neither the allegations in the Complaint nor the "facts" added by ComEd (assuming the Court could even consider them) establish the elements of the defense. The FCC defines "emergency purposes" as "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). Here, the text message sent to Plaintiff and other consumers informing them that they had been unilaterally enrolled in the Outage Alert program—not informing them of an actual emergency—simply was neither necessary nor sent in a situation affecting the health and safety of consumers.

While notification of power outages may constitute an emergency purpose, the legislative history cited by ComEd makes clear that the power outage must be "impending or current." 137 Cong. Rec. H11307-01, 1991 WL 250340 (Nov. 26, 1991) (statement of Rep. Edward J. Markey) ("The term 'emergency purposes' is . . . intended to include any automated telephone call that notifies consumers of *impending or current* power outages . . . .") (emphasis added); 137

---

[8] Even if the text messages here were purely informational (contrary to the allegations in the Complaint and not determinable without discovery), and prior express *oral* consent was thus sufficient, provision of a cell phone number alone does not constitute such consent. The cell phone number must have been provided for the purpose of receiving informational calls. For example, the FCC explains that "a community bank will not have to secure prior express written consent to provide a fraud alert notification to its customer's wireless number. In this instance, prior express oral consent *to receive notifications* satisfies our rules." 2012 FCC Order at 1867 (emphasis added). Again, neither the facts alleged nor those improperly introduced by ComEd remotely establish that such consent was provided, and ComEd's motion should be denied.

Cong. Rec. S18781-02, 1991 WL 252592 (Nov. 27, 1991) (statement of Sen. Ernest F. Hollings) ("[T]he FCC could find that 'emergency purpose' includes any automated telephone call that notifies consumers of *impending or current* power outages . . . .") (emphasis added) (both quoted in Mem. Supp. Def. Mot. Dism. at 12-13); *see also* 137 Cong. Rec. S16204-01, 1991 WL 229525 (Nov. 7, 1991) (statement of Sen. Ernest F. Hollings) ("It is not my intention in this bill to restrict the use of artificial or prerecorded voice messages in *genuine* emergency situations.") (emphasis added). Here, the text messages were not sent to notify consumers of a power outage, let alone an impending or current one. (Compl. ¶ 24.) Instead, the text messages simply informed consumers they had been unilaterally enrolled in the Outage Alert program. Given the Outage Alert program was developed, in part, to promote the ComEd brand and customer satisfaction in the aftermath of Illinois electricity deregulation and resultant increased competition for the provision of electric services, the veracity of its factual assertions are questionable. *See* Electric Service Customer Choice and Rate Relief Law of 1997, 220 ILCS 5/16-101, *et seq*.

      ComEd argues that it needed to send the text message as "a necessary and logical first step" to future emergency communications. (Mem. Supp. Def. Mot. Dism. at 14.) ComEd asserts that, absent this initial pre-emergency text message, customers would have been "unaware" of the Outage Alert program and been "confused and/or uncertain" about the authenticity of text messages received during an actual emergency. (*Id*. at 14-15.) But not only is the assertion that consumers would be confused in an actual emergency absent an introductory text message a statement of fact not alleged in the Complaint, they are undermined by another of ComEd's assertions of unalleged fact: that, in addition to sending the initial text messages, ComEd sent consumers a letter or email describing the Outage Alert program. (Mem. Supp. Def. Mot. Dism. at 14 n.7.) The fact that ComEd informed its customers of the Outage Alert program by letter and

email confirms both (1) that the text message notifications here were not sent during a genuine (*i.e.*, impending or current) emergency, and (2) that, even if pre-emergency notification were necessary to avoid confusion during an actual emergency, alternate notification methods existed (and apparently were used) that do not violate the TCPA.[9] *See Strickler v. Bijora, Inc.*, 11-cv-3468, 2012 WL 5386089, at *6 (N.D. Ill. Oct. 30, 2012) (rejecting First Amendment challenge to the TCPA because many alternative methods of communication existed besides text messages).

While a text message to Plaintiff and other consumers to notify them of an impending or current power outage likely would not violate the TCPA (regardless of whether they opted into the Outage Alert program), the text message here informing them they had been unilaterally enrolled in the program *does* violate the TCPA. Neither the Complaint nor the additional "facts" improperly asserted in ComEd's motion establish the emergency purposes affirmative defense.

## IV. CONCLUSION

Plaintiff's Complaint sufficiently alleges the elements of a TCPA claim, and, for that reason alone, should not be dismissed. ComEd's assertion of affirmative defenses that are supported by neither the allegations in the Complaint nor the additional "facts" improperly asserted by ComEd cannot and do not warrant dismissal, and, consequently, ComEd's Rule 12(b)(6) Motion to Dismiss should be denied.

---

[9] ComEd also asserts that it had to send the text message notifying consumers that they had been unilaterally enrolled in the Outage Alert program because a "confirmation" message following enrollment in a recurring messaging program is consistent with industry best practices. (Mem. Supp. Def. Mot. Dism. at 14 n.6.) Putting aside the fact that industry best practices cannot trump a federal statute, the best practices guideline cited by ComEd expressly refers to sending a text message confirmation that a consumer has *opted in* to a program, not—as here—a text message stating that a consumer has been unilaterally enrolled in a program without their knowledge or consent. *See* Mobile Marketing Association, *U.S. Consumer Best Practices for Messaging* § 1.4-9 (Oct. 16, 2012), *available at* http://mmaglobal.com/bestpractices.pdf (cited in Mem. Supp. Def. Mot. Dism. at 14 n.6) ("*After opt-in*," a confirmation text should be sent) (emphasis added). Indeed, those very same industry best practices state that senders "must obtain opt-in approval from subscribers before sending them any [text messages]." *Id*. § 1.4-1.

|                              | Respectfully submitted,                                    |
|------------------------------|------------------------------------------------------------|
| Dated: March 21, 2014        | **MICHAEL GRANT**, individually and on behalf of all others similarly situated, |
|                              | By: /s/ John C. Ochoa                                      |
|                              |       One of Plaintiff's Attorneys                         |

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
Mark S. Eisen
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Grant and the putative Class*

**CERTIFICATE OF SERVICE**

       I, John C. Ochoa, an attorney, certify that on March 21, 2014, I served the above and foregoing ***Plaintiff's Response to Defendant's Motion to Dismiss*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 21st day of March, 2014.

                                        /s/ John C. Ochoa