**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated, | Case No. 1:13-cv-8310 |
| *Plaintiff*, | |
| v. | |
| COMMONWEALTH EDISON COMPANY, an Illinois corporation, | |
| *Defendant*. | |

**UNOPPOSED MOTION FOR LEAVE TO FILE MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH EXCESS PAGES, *INSTANTER***

Pursuant to Local Rule 7.1, and without opposition from Defendant Commonwealth Edison Company ("ComEd"), Plaintiff Michael Grant ("Grant") hereby respectfully requests that the Court grant him leave to file a memorandum in support of his Motion for Preliminary Approval of Proposed Class Action Settlement in excess of the Court's fifteen-page (15) limit, *instanter*. In support of the instant motion, Grant states as follows:

1.      As the Parties previously informed the Court, they have reached a proposed class action settlement of the claims in this matter. (*See* dkt. 42.)

2.      Plaintiff Grant now intends to move the Court for preliminary approval of the Parties' proposed settlement.

3.      However, in order to adequately address (i) the factual and procedural posture of the case, (ii) the terms of the settlement, (iii) the appropriateness of certifying the proposed Settlement Class for settlement purposes, and (iv) the fairness, adequacy and reasonableness of the proposed settlement, Grant's Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement (the "Memorandum") exceeds the Court's fifteen-page limit.

4.      Specifically, Grant's Memorandum includes a total of twenty-six (26) pages of substance.

5.      Prior to filing the instant motion, Grant's counsel conferred with counsel for ComEd and is authorized to state that ComEd has no objection to the relief requested herein.

6.      Good cause exists to grant the instant motion and the relief requested herein is not sought for any improper purpose.

7.      Attached hereto as Exhibit A is a true and accurate copy of Plaintiff's Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement.

**WHEREFORE,** Plaintiff Michael Grant respectfully requests that the Court enter an Order (i) granting him leave to file his Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement, the substance of which shall not exceed twenty-six (26) pages, *instanter*, and (ii) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**MICHAEL GRANT**, individually and on behalf of all others similarly situated,

Dated: April 24, 2015

By:  ___/s/  Ari J. Scharg_____
      One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, hereby certify that on April 24, 2015, I served the above and foregoing *Unopposed Motion for Leave to File Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement with Excess Pages, Instanter*, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 24th day of April 2015.

/s/  Ari J. Scharg

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated, | Case No. 1:13-cv-8310 |
| *Plaintiff*, | |
| v. | |
| COMMONWEALTH EDISON COMPANY, an Illinois corporation, | |
| *Defendant*. | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................1

II.  BACKGROUND............................................................................................................3

    A.  Plaintiff's Allegations ........................................................................................3

    B.  The TCPA ..........................................................................................................4

    C.  The Litigation History........................................................................................5

    D.  Reaching the Settlement Agreement ..................................................................6

III.  TERMS OF THE SETTLEMENT..................................................................................6

    A.  Class Definition..................................................................................................6

    B.  Monetary Relief..................................................................................................7

    C.  Prospective Relief ..............................................................................................7

    D.  Payment of Notice and Settlement Administrative Expenses.......................................7

    E.  Incentive Award for Class Representative .................................................................8

    F.  Payment of Attorneys' Fees and Expenses................................................................8

    G.  Release of Liability ............................................................................................8

IV.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
    SETTLEMENT PURPOSES..........................................................................................8

    A.  The Settlement Class is Sufficiently Numerous .........................................................9

    B.  Settlement Class Members Share Common Questions of Law and Fact...................10

    C.  Grant's Claims are Typical of the Settlement Class Members' Claims.....................11

    D.  Plaintiff and Class Counsel Will Adequately Represent the Settlement Class...........12

    E.  The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3) ...........14

        1.  Common Questions of Law and Fact Predominate .........................................14

2.  A Class Action is the Superior Method of Adjudicating This
    Controversy ................................................................................................. 15

V.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ............... 16

VI.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................... 18

A.  The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement,
    Favors Preliminary Approval ..................................................................... 19

B.  The Expected Duration, Complexity, and Expense of Further Litigation Weigh in
    Favor of Preliminary Approval ................................................................. 22

C.  The Opinion of Competent Counsel Supports Preliminary Approval ....................... 23

D.  The Stage of the Proceedings Completed Support Preliminary Approval ................. 24

VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ....................................... 24

VIII. CONCLUSION ................................................................................................ 26

## **TABLE OF AUTHORITIES**

United States Supreme Court Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................8, 9, 14, 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................................24

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012)..................................................................4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................10

United States Circuit Court of Appeals Cases

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) .......18, 19

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008)...........................................................................9

*Donovan v. Estate of Fitzsimmons,* 778 F.2d 298 (7th Cir. 1985)................................................19

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)....................................................................19

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)..........................................................................18

*Harper v. Sheriff of Cook Co.,* 581 F.3d 511 (7th Cir. 2009) .........................................................9

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996).....................................................................18, 20, 23

*Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481 (7th Cir. 2012) ...................................................10

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........................................................................10, 11

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997) ........................................................16

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ..................................15

*Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13 (2d Cir. 2003) ............................................22

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ..................................................................9

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013) ......................17

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)......................................................................10

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).........................................5, 17

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) .........................................4

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)................................................10, 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)...................18, 19

*Wong v. Accretive Health, Inc.* 773 F.3d 859 (7th Cir. 2014) .......................................................19

United States District Court Cases

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ...................... *passim*

*CE Design v. Beaty Const., Inc.*, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ...............................13

*Greene v. DirecTV*, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ...................................................21

*G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010)..............10

*Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008)  ...........................17

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)...................................10

*Holtzman v. Turza*, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009)...................................................12

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) .. *passim*

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ...............................................................................23

*In re Capital One TCPA Litig.*, 2015 WL 605203 (N.D. Ill. Feb. 12, 2015)............................2, 20

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-MD-02261, Dkt. 97 (S.D. Cal. 2013) ...2, 20

*In re Northfield Labs., Inc. Sec. Litig.*,
    No. 06-cv-1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012).......................................18, 24

*Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, Dkt. 94 (N.D. Cal. 2012).................2, 20

*Kessler v. Am. Resorts Int'l*, 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .............19

*Kolinek v. Walgreens, Inc.*, No. 13-cv-04806, Dkt. 97 (N.D. Ill. Apr. 3, 2015).......................3, 21

*Kolinek v. Walgreen Co.*, 2014 WL 3056813 (N.D. Ill. July 7, 2014) ..........................................21

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012).........................1, 20

*Lozano v. Twentieth Century Fox Film Corp.*,
No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) .........................................................2, 14, 17, 20

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010)....................4

*Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 (N.D. Ill. 2013) ............................13, 17

*Moreno v. Napolitano*, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014)...........................................12

*Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013) ...............12

*Otero v. Dart*, 2014 WL 4344029 (N.D. Ill. Sept. 2, 2014)...................................................12, 15

*Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008).......................................15

*Roberts v. Paypal, Inc.*, 2013 WL 2384242 (N.D. Cal. May 30, 2013) .......................................21

*Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 (N.D. Ill.)..........................................13, 17

*Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014)................................2, 20

*Ryabyshchuck v. Citibank (S.D.) N.A.*, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) .................21

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*,
2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)...........................................................................12

*Samantha Ellison v. Steven Madden Ltd.*, No. 11-cv-5935, Dkt. 73 (C.D. Cal 2013) ............17, 23

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011).........................................23, 24

*Starr v. Chicago Cut Steakhouse, LLC*, 2014 WL 7146061 (N.D. Ill. Dec. 15, 2014) ..................9

*Subedi v. Merch.*, 2010 WL 1978693 (N.D. Ill. May 17, 2010)....................................................15

*Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) ..............2, 20

Statutes

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

28 U.S.C. § 1715 ...........................................................................................................................26

47 U.S.C. § 227............................................................................................................................5, 16

Other Authority

*Manual for Complex Litigation* § 21.632 (4th ed. 2004)................................................................8

## I.    INTRODUCTION

Plaintiff Michael Grant ("Plaintiff") respectfully requests that the Court grant preliminary approval of the Parties' Class Action Settlement Agreement (the "Settlement"). If approved, the Settlement will resolve the claim that Defendant Commonwealth Edison Company ("ComEd") violated the Telephone Consumer Protection Act ("TCPA") when it sent an introductory text message about its "outage alert" program to its customers' cell phones. As discussed herein, the Settlement—which was reached with the assistance of the Honorable Wayne R. Andersen (Ret.) of JAMS, and only after completing class and merits discovery—is an excellent result for the proposed Settlement Class.[1]

Under the terms of the Settlement, Defendant has agreed to establish a $4.95 million non-reversionary Settlement Fund, which would be used to pay all approved claims, notice and administration expenses, an incentive award to Plaintiff Grant, and attorneys' fees awarded by the Court to proposed Class Counsel. In terms of the monetary relief to class members, those who submit a short claim form will receive a *pro rata* cash award, estimated at $50. And finally, the Settlement also requires Defendant to provide its employees with TCPA compliance training to ensure that it does not send any unlawful text messages going forward.

The Settlement's strength is perhaps best demonstrated by comparing it to other TCPA settlements. In the prototypical TCPA case—where individuals received unsolicited promotional calls or text messages from companies with which they have no connection or relationship—class members generally receive between $100 and $200. *See, e.g., Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (providing for a cash payment of $100 to each

---

[1]  Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Class Action Settlement Agreement.

class member); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) (providing for a cash payment of $150 to each class member); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) (providing for a cash payment of $200 to each class member). In the larger TCPA cases—with many millions of class members—class members generally receive between $20 to $40. *See In re Capital One TCPA Litig.*, --- F. Supp. 3d ---, 2015 WL 605203, at *5 (N.D. Ill. Feb. 12, 2015) (finally approving settlement that provided for cash payment of $34.60 to each claiming class member); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014) (estimating cash payment of $20-$40 to each claiming class member). On the other hand, in "direct relationship" TCPA cases—where, like here, the recipients of the calls voluntarily provided their cell phone numbers to the caller at some point in time—the settlements generally result in coupons or relatively small cash awards. *See Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-MD-02261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher, which could be redeemed for $15 cash after expiration of nine month waiting period).

Here, the instant settlement—which projects to net claiming Settlement Class Members (all of whom voluntarily provided their cell phone numbers to Defendant) approximately $50 after taking into account anticipated claims rates—outperforms the results achieved in other "direct relationship" cases and even many of the prototypical "spam" cases. That alone is good support for the Court granting preliminary approval. But, the Settlement Class had an additional hurdle in this case which makes the settlement even stronger: unlike in cases described above where consent was the only real defense, ComEd was also asserting that the text messages at issue fall within the TCPA's "emergency purpose" exception. Though Plaintiff believes he

would have overcome that defense at summary judgment or trial, he is also mindful that it is an untested area of the law that would ultimately likely be decided by the FCC and/or the appellate courts. Indeed, the only other case where these issues were at play—e.g., both consent and the emergency purpose exception—settled on substantially similar terms, and just recently received the preliminary approval of Judge Kennelly. *Kolinek v. Walgreens, Inc*., No. 13-cv-04806, Dkt. 97 (N.D. Ill. Apr. 3, 2015) (preliminarily approving settlement that provided for cash payment of approximately $20 to each claiming class member).

In the end, as explained further below, the results achieved for the Settlement Class are well beyond those required to preliminarily approve the proposed Settlement, especially in light of the risks and uncertainties surrounding Defendant's prior express consent and "emergency purpose" defenses. For these reasons, Plaintiff respectfully requests that the Court (1) certify the proposed Settlement Class, (2) appoint him as Class Representative and his counsel as Class Counsel, (3) approve the proposed form and content of the notice to the Settlement Class, (4) grant preliminarily approval to the Settlement, and (5) schedule the final fairness hearing.

## II.  BACKGROUND

### A.  Plaintiff's Allegations

Defendant ComEd is the largest electric utility company in Illinois. (Dkt. 1 ["Compl."] ¶ 1.) In January 2012, Defendant created the "Outage Alert" text-messaging program. (*Id*. ¶¶ 2, 15, 25.) One aspect of the Outage Alert program was to send—to customers who voluntarily chose to participate in the program—text message alerts regarding power outages. (*Id*. ¶ 16.) Plaintiff alleges that due to the low number of voluntary enrollments, Defendant decided to unilaterally enroll approximately 1.2 million of its Illinois customers into the program. (*Id*. ¶ 20.) To notify its customers of their enrollment, Plaintiff alleges that Defendant sent the following text message

3

(the "Text Message") to Plaintiff and the other members of the Settlement Class in or around November 2014:

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe. HELP for info.

(*Id.* ¶¶ 21, 26.) The Text Messages were all sent from SMS shortcode "26633." Plaintiff further alleges that he did not consent to receive this (or any other) text message from Defendant (*id.* ¶¶ 3, 20, 21, 23, 34), and that the text message at issue was not sent for an emergency purpose. (*Id.* ¶¶ 21, 24-25.)

## B. The TCPA

Turning to the relevant law, Congress passed the TCPA in response to "voluminous consumer complaints," and to prohibit "intrusive nuisance calls." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) (noting that the TCPA was passed to combat the "expense" and "annoyance" of autodialed calls to consumers' cell phones; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1011 (N.D. Ill. 2010) (finding that "the TCPA serves a significant government interest of minimizing the invasion of privacy caused by unsolicited telephone communications to consumers."). The TCPA applies to traditional phone calls as well as text message calls. As such, the TCPA provides a means to combat the growing threat to privacy being caused by automated telemarketing practices, and states that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . . .

47 U.S.C. § 227(b)(1)(A)(iii). *Id.* at 1009.

The TCPA applies to traditional phone calls as well as text message calls. *Satterfield v.*

*Simon & Schuster*, *Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). But calls made with the "prior express consent" of the recipient or for "emergency purposes" are exempted. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if the conduct is found to be willful) and provides for injunctive relief prohibiting the further transmission of such messages. 47 U.S.C. § 227(b)(3)(A)-(B).

### C. The Litigation History

Plaintiff filed this lawsuit on November 19, 2013. (Dkt. 1.) On February 21, 2014, Defendant moved to dismiss Plaintiff's Complaint under Rule 12(b)(6), arguing that (1) Plaintiff consented to receive the Text Message by voluntarily providing his telephone number to ComEd as a primary point of contact, and (2) that the Text Message falls within the TCPA's "emergency purpose" exemption. (*See* Dkt. 14, 15.) On June 4, 2014, the Court denied the motion, finding that it would be more appropriate to consider the issues raised by Defendant after discovery on a full record. (Dkt. 21.)

After Defendant answered the Complaint, (Dkt. 22), the Parties engaged in six months of class and merits discovery. (Declaration of Ari J. Scharg ["Scharg Decl."], ¶¶ 7-10.) During that time, the Parties exchanged thousands of documents. (*Id.* ¶ 8.) Plaintiff also conducted substantial written discovery with third parties Agent511 (ComEd's vendor that assisted in the implementation and sending of the Text Message), and mBlox, Inc. (a company involved in the transmission of the Text Message that maintained records of the transmissions). (*Id.* ¶ 9.) Further, Plaintiff took the depositions of three corporate representatives that Defendant designated under Rule 30(b)(6), and a corporate representative that was similarly designated by Agent511. (*Id.* ¶ 8.) For its part, Defendant conducted substantial written discovery on Plaintiff Grant, and also took his deposition. (*Id.* ¶ 10.)

At the December 4, 2014 status hearing, the Court set a briefing schedule for the Parties' cross-motions for summary judgment (which was later extended by agreement of the Parties), as well as Plaintiff motion for class certification deadline. (Dkt. 35.)

### D. Reaching the Settlement Agreement

Prior to the start of formal discovery, and in the midst of briefing on Defendant's motion to dismiss, the Parties first began to discuss the possibility of settlement. On April 2, 2014, they took part in a formal mediation session with Judge Wayne Andersen of JAMS. (Scharg Decl. ¶ 5.) After numerous rounds of discussions regarding the respective claims and defenses it became apparent that both parties held strong and conflicting viewpoints regarding the case's merits, which prevented them from reaching an early settlement. (*Id.* ¶ 6.) As such, the parties moved forward with the litigation.

The parties resumed settlement discussions after the completion of discovery in the weeks leading up to the dispositive motions deadline. (Scharg Decl. ¶ 11.) On February 5, 2015 the Parties agreed to an additional in-person mediation session with Judge Andersen. (*Id.*) On February 19, 2015, after a full day of mediation and additional rounds of arm's-length negotiations, the Parties ultimately agreed on the material terms of the Settlement now before the Court. (*Id.*)

## III. TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement (which is attached as Exhibit 1) are briefly summarized as follows:

### A. Class Definition

The Settlement defines the "Settlement Class" as all Persons in the United States who were sent the following text message on their cellular phone without consent:

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit
> ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe.
> HELP for info.

(Settlement ¶ 1.27). Excluded from the Settlement Class are (1) any Judge, Magistrate Judge, or

mediator presiding over this action and members of their immediate families, (2) the Defendant,

Defendant's parent companies, successors, predecessors, and any entity in which the Defendant

or its parents have a controlling interest and their current or former officers and directors, (3)

Persons who properly execute and file a timely request for exclusion from the class, and (4) the

legal representatives, successors or assigns of any such excluded persons. (*Id.*)

### B. Monetary Relief

Defendant has agreed to establish a $4,950,000.00 non-reversionary Settlement Fund,

from which each member of the Settlement Class who submits a valid claim shall be entitled to a

*pro rata* portion of the Settlement Fund after payment of all settlement administration expenses,

incentive awards to the class representative, and the fee award to class counsel. (*Id.* ¶ 2.1.) Based

on the anticipated claims rates, Plaintiff's counsel estimates that each member of the Settlement

Class who submits a valid claim will receive approximately $50.

### C. Prospective Relief

In addition to the monetary relief to the Settlement Class, Defendant has also agreed that

it will provide TCPA training to its key employees who manage customer communications. (*Id.*

¶ 2.2.)

### D. Payment of Notice and Settlement Administrative Expenses

Defendant has agreed to pay, from the Settlement Fund, the cost of sending the notice set

forth in the Settlement Agreement and any other notice as required by the Court, as well as all

costs attendant with administration of the settlement. (*Id.* ¶ 1.25.)

### E. Incentive Award for Class Representative

In recognition of Plaintiff's time and effort serving as class representative, class counsel will petition the Court for an incentive award not to exceed $5,000. (*Id.* ¶ 8.3.) Should the Court award an incentive award in an amount less than that requested, the difference will remain in the Settlement Fund. (*Id.*)

### F. Payment of Attorneys' Fees and Expenses

Proposed class counsel will petition the Court for reasonable attorneys' fees and reimbursement of costs from the Settlement Fund.[2] (*Id.* ¶¶ 1.11, 8.1.) Should the Court award of fees and expenses in an amount less than that requested, the difference will remain in the settlement fund to pay valid claims. (*Id.*)

### G. Release of Liability

In exchange for the relief described above, Defendant, and each of its related entities and affiliated persons, will receive a full release of all claims related to the transmission of the Text Message to members of the Settlement Class as a result. (*Id.* ¶¶ 1.22, 3.1-3.2.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The first step in the process of granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A party seeking class certification must satisfy the factors enumerated in Federal Rule of Civil Procedure 23(a) by demonstrating that (1) the class is so numerous that joinder of all members is

---

[2] For notice purposes, the notice documents shall indicate that proposed Class Counsel have unilaterally agreed to limit their fee petition to 36% of the Settlement Fund, and that their fee petition will be posted to the Settlement Website no later than fourteen (14) days before the objection deadline.

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Harper v. Sheriff of Cook Co.,* 581 F.3d 511, 513 (7th Cir. 2009); *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008).

In addition to satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Harper*, 581 F.3d at 513. In the instant matter, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3). Certification under this provision requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. *See Amchem*, 521 U.S. at 615-16; *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) *cert. denied*, 131 S. Ct. 998 (2011). Ultimately, district courts have broad discretion to determine whether certification of a class action lawsuit is appropriate. *Starr v. Chicago Cut Steakhouse, LLC*, ---F. Supp. 3d---, 2014 WL 7146061, at *7 (N.D. Ill. Dec. 15, 2014).

As described in detail below, the proposed Settlement Class satisfies all of these prerequisites and should therefore be certified.

**A.     The Settlement Class is Sufficiently Numerous**

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 341 (N.D. Ill. 2010); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014). Although there is no "magic number" at which joinder becomes impracticable, the requirement of numerosity is usually met when the class is comprised of forty or more persons. *See Birchmeier*, 302 F.R.D. at 250. Here,

there is no question that the Settlement Class is sufficiently numerous, because Defendant's

records indicate that it sent the Text Message to approximately 1.2 million individuals, whose

phone numbers, addresses, and email addresses Defendant still has in its records.[3] (Scharg Decl.

¶ 13.) Given both the substantial size and ascertainability of the proposed class, the Settlement

Class satisfies the numerosity requirement.

### B. Settlement Class Members Share Common Questions of Law and Fact

The second requirement of class certification asks whether there are "questions of law or

fact common to the class" that exist. Fed. R. Civ. P. 23(a)(2); *see also Suchanek v. Sturm Foods,*

*Inc.*, 764 F.3d 750, 755 (7th Cir. 2014). For certification, class members must share "a common

contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2551 (2011); *Birchmeier* 302 F.R.D. at 250. "A common nucleus of operative fact is usually

enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589,

594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Commonality typically exists where a defendant has engaged in standardized conduct towards

members of the proposed class. *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806

(N.D. Ill. 2008).

Here, the proposed Settlement Class satisfies the commonality requirement of Rule 23(a).

Grant alleges, and discovery has confirmed, that Defendant, with the assistance of its vendor

---

[3] Although not explicitly required under Rule 23, a party seeking class certification must also show that the class is "sufficiently definite or ascertainable." *Birchmeier*, 302 F.R.D. at 245 (citing *Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). Ascertainability is met when class members can be identified based on "precise, objective criteria." *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, 2010 WL 744262, at *4 (N.D. Ill. Feb. 25, 2010) (citation omitted). Because Settlement Class membership here is based on straightforward criteria—receipt of an unsolicited text message from ComEd on one's cellular telephone (Settlement ¶ 1.27)—and Defendant has provided a list of all individuals who satisfy such criteria, the ascertainability requirement is satisfied as well.

Agent511, collected the cellular telephone numbers of ComEd customers who had not already enrolled in the outage alert program and sent identical text messages to Plaintiff and the Settlement Class using the same dialing equipment. This standardized conduct raises several issues of fact and law common to the Settlement Class, including: (1) whether that dialing equipment falls within the statutory definition of an "automatic telephone dialing system," (2) whether a customer's provision of a cellular telephone number to ComEd constituted "prior express consent" to receive the Text Message, (3) whether the Text Message falls within the TCPA's emergency purpose exception, and (4) whether ComEd's conduct was willful or knowing. Because the answers to those questions depend solely on Defendant's identical conduct towards every member of the Settlement Class, the Settlement Class's claims will rise and fall on the resolution of the same common questions. *See Suchanek*, 764 F.3d at 757 (finding that the commonality requirement is satisfied when "[plaintiff's] claims and those of the class [he] would like to represent all derive from a single course of conduct by [Defendant]").

### C. Grant's Claims are Typical of the Settlement Class Members' Claims

The third element of Rule 23(a)—typicality—directs courts to focus on whether the plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Birchmeier*, 302 F.R.D. at 251; *In re AT&T*, 270 F.R.D. at 342. Typicality and commonality are closely related. Typicality exists where the claims of the named plaintiff arise from the same event or course of conduct that, in turn, gives rise to the claims of other class members, and where those claims are based on the same legal theory. *Id.* (citing *Keele*, 149 F.3d at 594). Courts routinely find that the typicality requirement is met where a defendant's conduct consisted of sending an unsolicited message by text message or fax in violation of the TCPA. *See, e.g., Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551, at *5 (N.D. Ill. Mar. 13,

2013); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, 2012 WL 6106714, at *4 (N.D.

Ill. Dec. 6, 2012); *Holtzman v. Turza*, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009).

Here, Plaintiff's claims are virtually identical to those of the other Settlement Class

Members. He alleges that he received the Text Message from ComEd in violation of the TCPA.

In the end, Plaintiff and the Settlement Class received the exact same text message, from the

exact same Defendant, that were sent in the exact same manner, and for the exact same reason.

"That is enough for Rule 23(a)(3) purposes." *In re AT&T*, 270 F.R.D. at 330 (citation omitted);

*see also Birchmeier*, 302 F.R.D. at 251 (finding that "because the named plaintiffs received the

same type of call as the other class members, their claims are typical of those of the class.").

Thus, Grant's claims are unquestionably typical of those of the Settlement Class and the pursuit

of his claims will necessarily advance the interests of the absent Settlement Class members.

Typicality is readily satisfied.

### D. Plaintiff and Class Counsel Will Adequately Represent the Settlement Class.

The final Rule 23(a) requirement—adequacy—is satisfied where "the representative

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see*

*also Otero v. Dart*, 2014 WL 4344029, at *7 (N.D. Ill. Sept. 2, 2014); *Birchmeier*, 302 F.R.D. at

252. There are two components to the adequacy inquiry: "(1) the adequacy of the named

plaintiffs as representatives of the proposed class's myriad members, with their differing and

separate interests, and (2) the adequacy of the proposed class counsel." *Moreno v. Napolitano*,

2014 WL 4911938, at *10 (N.D. Ill. Sept. 30, 2014) (internal citation omitted). As it relates to

the class representative, courts must determine whether his interests in the outcome are in

harmony with the interests of the class members he seeks to represent. *See In re AT&T*, 270

F.R.D. at 343. When it comes to class counsel, it is their experience litigating similar actions and

dedication of time and resources to the case that matters. *See id.* at 344.

Here, both Grant, as proposed class representative, and Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of Edelson PC as proposed Class Counsel, will fairly and adequately represent the interests of the proposed Settlement Class. First, Grant's interest in redressing Defendant's alleged violation of the TCPA is identical to the interests of all other Settlement Class members: they all suffered the same alleged injury when they received the unauthorized text message regarding enrollment in ComEd's automated power outage alert system. (Scharg Decl. ¶ 15.) Thus, Plaintiff Grant's interests are entirely representative of and consistent with the interests of the Settlement Class. *See CE Design v. Beaty Const., Inc.*, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009) (claims of named plaintiff and proposed class were "based upon the same legal theory, *i.e.* violation of the TCPA," where defendant sent unsolicited advertisements to both). Because his interests in obtaining statutorily awarded monetary and prospective relief from ComEd under the TCPA mirrors the interests of the Settlement Class, Plaintiff satisfies the first prong of the adequacy analysis.

In addition, and as explained more fully in Section V below, proposed Class Counsel are experienced members of the plaintiffs' bar that have litigated similarly complex consumer class actions, including many under the TCPA. (*See infra* Section V; Scharg Decl. ¶ 16.) Indeed, Plaintiff's counsel have regularly been found to be adequate representatives in TCPA actions, including several in this District. *See Birchmeier*, 302 F.R.D. at 252 (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 at 5 (N.D. Ill.) (finding that "attorneys [at Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel."); *Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 at 4 (N.D. Ill. 2013) (appointing attorneys at Edelson PC as class counsel);

*Lozano*, No. 09-cv-06344, Dkt. 64 (N.D. Ill.) (same).

Moreover, proposed Class Counsel has devoted substantial resources to the prosecution of this action by, for example, investigating the claims of Grant and the Settlement Class, aggressively pursuing those claims through motion practice, conducting extensive class and merits discovery, participating in two formal mediations, and ultimately reaching a favorable resolution. And they will continue to do so throughout the action's pendency. (Scharg Decl. ¶¶ 8-9, 17.)

Accordingly, since Grant and his counsel have demonstrated their commitment to vigorously representing the Settlement Class and neither has interests antagonistic to the Settlement Class, the adequacy requirement is undoubtedly met.

### E. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).

In addition to the four requirements for certification under Rule 23(a), the proposed Settlement Class also satisfies the two additional requirements imposed under Rule 23(b)(3)—predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3); *see also In re AT&T*, 270 F.R.D. at 334. The purpose of these additional requirements is to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citing Fed. R. Civ. P. 23 advisory committee's notes); *Birchmeier*, 302 F.R.D. at 255. As explained below, the requirements of predominance and superiority are readily met.

### 1. Common Questions of Law and Fact Predominate.

While commonality under Rule 23(a)(2) confirms the presence of common questions of law or fact, the predominance requirement of Rule 23(b)(3) requires that those common questions qualitatively "represent a significant aspect of [the] case." *Messner v. Northshore*

*Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *see also In re AT & T*, 270 F.R.D. at 345. A class is often considered "cohesive" when a defendant has engaged in standardized conduct that is identical toward each class member. *See AT & T*, 270 F.R.D. at 345. And when common evidence can be used to prove a class's claims, the predominance requirement is generally satisfied. *See Messner*, 669 F.3d at 819.

Here, the common factual and legal questions detailed in Section IV.B.—*e.g.*, whether the dialing equipment ComEd used to send the Text Messages to cell phones is an ATDS, whether ComEd obtained valid consent, whether the Text Messages fall within the TCPA's emergency purpose exception, and whether ComEd's conduct was willful or knowing—are the central focus of Plaintiff's and the Settlement Class Members' TCPA claims. Given that the Settlement Class Members all received the same text message, made by the same entities, in the same manner, common questions predominate, and the first requirement of Rule 23(b)(3) is met.

### 2. A Class Action is the Superior Method of Adjudicating This Controversy.

Finally, Rule 23(b)(3) requires that a class action is the superior method of "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(B); *see also Birchmeier*, 320 F.R.D. at 255; *Subedi v. Merch.*, 2010 WL 1978693, at *6 (N.D. Ill. May 17, 2010). Class treatment is particularly well suited for claims resulting from standardized conduct because it enables the court to "determine the legality of [an] alleged practice and procedure in one proceeding." *Otero*, 2014 WL 4344029, at *9; *see also Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008). A class action is also superior in cases where individual damages are relatively low, because it allows individuals to aggregate their claims, overcoming

the "problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *See Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997).

Here, a class action is the superior method of resolving the controversy because it allows the court to swiftly resolve Plaintiff's and the class's TCPA claims against ComEd in a single proceeding, generating a uniform result that will apply to all similarly situated persons. Further, a class action is superior because it allows class members to aggregate relatively modest individual claims worth just $500 in statutory damages (or, at most, $1,500 in the case of willful conduct). *See* 47 U.S.C. § 227(b)(3)(C). By comparison to the modest relief available, the cost of litigating TCPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. In addition, individual claims would clog the court with an influx of separate actions, further delaying the possibility of relief and undermining Rule 23's policy of judicial efficiency. *See Birchmeier*, 302 F.R.D. at 255 ("In this case, plaintiffs have alleged that defendants chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims.").

By providing swift resolution of common claims in a way that would not be possible individually, the superiority requirement is satisfied. Because the requirements of Rule 23(a) and 23(b)(3) are satisfied, the proposed Settlement Class should be certified for settlement purposes.

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

When certifying a class, Rule 23 requires that a court appoint counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008). In appointing class

counsel, the court must consider (1) the work counsel has done in identifying or investigating the claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

Here, proposed Class Counsel readily satisfies the criteria of Rule 23(g). First, they have devoted—and will continue to devote—a significant amount of time and effort to this litigation, including through their investigation of Plaintiff's allegations, substantive motion practice, extensive written and oral discovery, mediations, and settlement discussions. (Scharg Decl. ¶¶ 8-9, 17.) Second, proposed class counsel has extensive experience litigating class actions of similar size, scope, and complexity to the instant action, and have been appointed class counsel in numerous TCPA class actions, many of them in this District. (*See* Firm Resume of Edelson PC, which is attached as Exhibit A to the Scharg Decl.); *see also Rojas v. CEC*, No. 10-cv-05260 (serving as lead counsel in $20 million text spam settlement); *Lozano v. 20th Century Fox,* No. 09-cv-06344 (serving as lead counsel in $16 million text spam settlement); *Miller v. Red Bull*, No. 12-cv-04961 (serving as lead counsel in $6 million text spam settlement). Edelson PC has developed an in-depth understanding of the TCPA and has successfully litigated emerging issues that continue to redefine its boundaries. *See, e.g.*, *Satterfield*, 569 F.3d 946 (9th Cir. 2009) (securing landmark ruling applying the TCPA to text messages); *Samantha Ellison v. Steven Madden Ltd.*, No. 11-cv-5935, Dkt. 73 at 9 (C.D. Cal 2013) ("[Attorneys at Edelson PC] specialize in litigating consumer class actions and have pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue.").

For these reasons, the Court should appoint Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of Edelson PC as Class Counsel.

## VI. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which involves a well-established two-step process. *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether the proposed settlement falls "within the range of possible approval" "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. And once preliminary is granted, class members are notified of the settlement and the court and parties proceed to the second step—the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test is used to determine whether a proposed settlement is fair, reasonable, and adequate, *Synfuel*. 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). Specifically, the longstanding rule in this Circuit looks to six factors when conducting a fairness determination: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the amount of opposition to the settlement (4) the reaction of the class member to the settlement; (5) the opinion of competent counsel, and (6) the stage of the

proceedings and amount of discovery completed. *Wong v. Accretive Health, Inc.* 773 F.3d 859, 863 (7th Cir. 2014) (collecting cases).[4] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314)).[5]

Here, each factor supports the Settlement, which this Court should find "well within the range of possible approval."

### A. The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement, Favors Preliminary Approval.

The first and most important factor in assessing a settlement's fairness is the strength of the plaintiff's case compared to the settlement offer. *Synfuel*, 463 F.3d at 653. The analysis begins by making a "ball park valuation" of the value of continued litigation to the class, which is considered in light of associated risks of continued protracted litigation. *See In re AT&T*, 270 F.R.D. at 347 (citing *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)). In addition, because a settlement is a compromise, "courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347

---

[4] The third and forth factors—the amount of opposition to the settlement and the reaction of the class members—are not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT & T*, 270 F.R.D. at 349. Accordingly, they are not considered here.

[5] In addition to these factors, the Seventh Circuit recently identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723–26 (7th Cir. 2014). None of these warning signs are present here, as the Agreement (1) creates an $4.95 million Settlement Fund, (2) with no funds reverting to ComEd, (3) and with the completion of a short and simple claim form (which requires only basic contact information and the cell phone number at which claimants affirm they received the Text Message), (4) Settlement Class members will receive real and immediate cash as relief. (*See* Agreement, ¶¶ 1.29, 2.1 & Exs. C and D; § III.B, *supra*.)

(quoting *Isby,* 75 F.3d at 1200) (internal quotations omitted).

First, the settlement—in terms of tangible monetary relief and improved customer contact practices going forward—is strong, both compared to other similar TCPA actions and when viewed in light of the risks of protracted litigation. With respect to similar TCPA cases, the monetary relief of $50 per claimant obtained here is consistent with, and in some instances, outperforms, other settlements in this area of the law. As noted above, in the prototypical TCPA case—where individuals allege they received unsolicited telemarketing calls from entities with which they have no connection or relationship—class members generally receive up to $200. *See, e.g., Kramer,* No. 10-cv-2722, Dkt. 148 (providing for a cash payment of $100 to each class member); *Weinstein,* No. 06-cv-00484, Dkt. 93 (providing for a cash payment of $150 to each class member); *Lozano,* No. 09-cv-6344, Dkt. 65 (providing for a cash payment of $200 to each class member). In the larger TCPA cases—with many millions of class members—class members generally receive between $20 to $40. *See In re Capital One TCPA Litig.* 2015 WL 605203, at *5 (finally approving settlement that provided for cash payment of $34.60 to each claiming class member); *Rose v. Bank of Am. Corp.,* No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014) (estimating cash payment of $20-$40 to each claiming class member). And then there are the "direct relationship" TCPA cases where, like here, the persons called voluntarily provided their cell phone numbers to the caller at some point in time, which generally result in coupon settlements or relatively small cash awards. *See Kazemi,* No. 3:09-cv-05142, Dkt. 94 (providing for a $25 voucher to each class member); *In re Jiffy Lube,* No. 11-md-2261, Dkt. 97 (providing for a $20 voucher, which could be redeemed for $15 cash after expiration of nine month waiting period).

Second, taking into account ComEd's defenses and the relationship between the Parties,

the strength of the settlement becomes even more apparent. On the issue of consent, it is undisputed that Plaintiff and the Settlement Class—all of whom are ComEd customers— voluntarily provided their cell phone numbers directly to ComEd when they registered for electric service. Although Plaintiff is confident that he would ultimately defeat ComEd's contention that this constitutes "prior express consent," *see Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *3 (N.D. Ill. July 7, 2014), he is mindful that certain courts have viewed this issue differently. *See, e.g., Greene v. DirecTV*, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (holding that provision of a cell phone number as a contact number constitutes prior express consent to be called); *Roberts v. Paypal, Inc.*, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.) N.A.*, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012) (same).

Finally, there's no question that whether the Text Messages fall within the "emergency purposes" exception is an issue of first impression. In fact, the only other case Class Counsel is aware of that involved this issue is pending before Judge Kennelly in the case captioned *Kolinek v. Walgreens, Inc.*, No. 13-cv-04806 (N.D. Ill. Apr. 3, 2015), and the case recently settled on similar terms and received preliminary approval. *Id.* (preliminarily approving settlement that provided for cash payment of approximately $20 to each claiming class member). Moreover, the legislative history of the TCPA, coupled with the discovery produced to date, lend at least some support to the defense. In the end, although Plaintiff maintains (and this Court recognized at the June 4, 2014, hearing) that the Text Message on its face does not alert ComEd customers of an emergency, the question of whether the Text Message falls within the exception remains open.

Absent a settlement, ComEd was prepared to seek summary judgment on these two

21

affirmative defenses. (Scharg Decl. ¶ 19.) And even if Plaintiff cleared those hurdles, ComEd would undoubtedly challenge a motion for class certification, further delaying the possibility of relief to the Settlement Class. (*Id*. ¶ 20.) Further still, if the case proceeded to trial, other roadblocks—such as the procurement of expert testimony—would stand in the way of a recovery on behalf of the class. And given the amount at stake and its reputational interests, ComEd is nearly certain to appeal any judgment in favor of the class, thus delaying recovery even further.[6] (*Id.*)

Despite these substantial uncertainties, the Settlement provides real and immediate cash relief—entitling each Settlement Class Member to an estimated $50 *pro rata* share of a $4.95 million Settlement Fund. (Agreement ¶ 2.1(b).) The Settlement also requires ComEd to provide training concerning TCPA compliance to its managers and employees responsible for customer communications within six (6) months of the Effective Date. (*Id.* ¶ 2.2.) In the end, the relief afforded by the Settlement is significant—especially in light of the numerous risks of further litigation—and thus weighs in favor of preliminary approval.

**B.      The Expected Duration, Complexity, and Expense of Further Litigation Weigh in Favor of Preliminary Approval.**

Preliminary approval is favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). If this case were not to resolve now, the Parties would have each filed their nearly completed cross-motions for

---

[6]   Additionally, given the number of Settlement Class members and minimum statutory damage award of $500, due process concerns could likely reduce the judgment ultimately awarded at trial anyway (if the case, in fact, goes to trial). *See Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13, 22 (2d Cir. 2003) ("And it may be that in a sufficiently serious case the due process clause might be invoked . . . to reduce the aggregate damage award.") (citations omitted).

summary judgment and began briefing on class certification. Regardless of the decision on class certification, the losing party would certainly appeal under Rule 23(f). Assuming certification were granted, if neither party is able to obtain complete victory at the summary judgment phase, the case would be headed for an expensive and high-stakes trial. In addition, ComEd would undoubtedly oppose Plaintiff's motion for class certification and appeal any decision in Plaintiff's favor. (Scharg Decl. ¶ 20.) If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class [m]embers with either no in-court recovery or some recovery many years from now." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). The proposed settlement, in contrast, avoids this long and winding path, and instead provides immediate relief to the Settlement Class.

Because the Settlement avoids protracted, costly, and complex litigation, the second factor also weighs in favor of preliminary approval.

### C. The Opinion of Competent Counsel Supports Preliminary Approval.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.* Here, and as described in the declaration of Ari J. Scharg of Edelson PC—which has been recognized as "specialize[d] in litigating consumer class actions and hav[ing] pioneered the application of the TCPA to text-messaging technology," *see Ellison*, No. 11-cv-5935, Dkt. 73 at 9—counsel believes that the instant Settlement is fair, reasonable, and adequate.

Here, and as described in the declaration of Ari J. Scharg, proposed Class Counsel believe that the instant Agreement is fair, reasonable, and adequate for the reasons explained in

Section V, *supra*. (Scharg Decl. ¶¶ 18-22.) As the Settlement provides significant relief for individuals who may otherwise be left without a remedy, and is on par with other, similar settlements, this factor weighs in favor of preliminary approval as well.

### D. The Stage of the Proceedings Completed Support Preliminary Approval.

As for the final factor, the instant Settlement was not reached until after the Parties litigated a Rule 12(b)(6) motion to dismiss, completed fact discovery, nearly completed briefing on summary judgment, and began preparing class certification briefing. What's more, the Parties required two separate mediation sessions with Judge Andersen before they could agree on terms. (*See* Scharg Decl. ¶¶ 5, 11.) As such, the parties had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and this factor weighs in favor of the preliminary fairness of the Settlement Agreement. The stage of the proceedings and amount of discovery completed also support preliminary approval.

## VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Due process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"); *Schulte*, 805 F. Supp. 2d at 595. Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also In re Northfield*, 2012 WL 366852, at *7. The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see also In re AT & T*, 270 F.R.D. at 352. This is

the case here, where the format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. All forms of notice are attached to the Agreement as Exhibits A-E.

To ensure that the notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have agreed to a comprehensive notice plan. (Agreement ¶¶ 1.26, 4.1.) First, relying on the Settlement Class list in ComEd's possession—which includes the names, addresses, email addresses, and cellular telephone numbers of the Settlement Class— ComEd will provide direct notice to Settlement Class Members through a summary notice and claim form included with the two concurrent electric bills sent to it affected current customers. ComEd will also provide the class list to the Settlement Administrator, who will send a summary notice to Settlement Class members via email, and send postcards to former ComEd customers. (*Id.* ¶ 4.1(a)–(d).) The notice will direct Settlement Class Members to the settlement website, www.ComEdTextSettlement.com, which contains electronic versions of claim forms that can be submitted online, important court documents, and answers to frequently asked questions. (Id. ¶ 4.1(e).

The settlement website, www.ComEdTextSettlement.com, will serve as the central hub for potential Settlement Class Members to gather information on the settlement and, if they qualify for Settlement Class membership, submit the appropriate claim form online. The website will include copies of the notice, claim forms, and other relevant documents and exhibits to the Agreement.[7]

---

[7] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Defendant will cause to be served notice of the Agreement upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials. (*Id.* ¶ 4.1(f).)

Through the emails, bill inserts, and postcards sent directly to Settlement Class members, and a dedicated settlement website—all using straightforward, easy-to-understand language—the proposed notice plan will reach as many members of the Settlement Class as possible under the circumstances. The Court should therefore approve the proposed notice plan.

## VIII.   CONCLUSION.

For the reasons discussed above, Plaintiff Michael Grant respectfully requests that this Court enter an order (1) conditionally certifying the proposed Settlement Class, (2) naming Plaintiff as class representative, (3) appointing Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of Edelson PC as Class Counsel, (4) granting preliminary approval to the settlement, (5) approving the proposed notice plan, (6) scheduling a final fairness hearing, and (7) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**MICHAEL GRANT**, individually and on behalf of all others similarly situated,

Dated: April 24, 2015                By:   _____
                                                  One of Plaintiff's attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

26

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated, | Case No. 1:13-cv-8310 |
| *Plaintiff*, | |
| *v.* | |
| COMMONWEALTH EDISON COMPANY, an Illinois corporation, | |
| *Defendant*. | |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and among Plaintiff Michael Grant ("Grant" or "Plaintiff"), the Settlement Class (as defined herein), and Defendant Commonwealth Edison Company ("ComEd" or "Defendant") (together, the "Parties"). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions of this Settlement Agreement, and subject to the final approval of the Court.

## RECITALS

A.    On November 19, 2013, Grant filed a putative class action against ComEd in the United States District Court for the Northern District of Illinois, captioned *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310 (the "Action"). Plaintiff's complaint alleged a single cause of action—that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending an unsolicited text message to its customers' cellular telephones regarding enrollment into its power outage alert program called the "Outage Alert

1

Program." (Dkt. 1.) Plaintiff alleged that the text message at issue was promotional in nature and did not actually alert customers of an actual or impending power outage.

B.      Defendant thereafter moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) Plaintiff had consented to receiving the text message at issue on his cellular telephone by voluntarily providing his telephone number to ComEd as a primary point of contact, and (2) that the text message at issue falls within the TCPA's "emergency purpose" exemption, 47 U.S.C. § 227(b)(1)(A). (*See* Dkt. 15.)

C.      Soon after the Court's entry of the case management schedule on February 5, 2014 (Dkt. 12), the Parties exchanged Rule 26(a)(1) disclosures and served written discovery on each other and on certain third parties. The Parties also informally exchanged documents and information relevant to their respective claims and defenses.

D.      On April 2, 2014, following the filing of Plaintiff's response in opposition to Defendant's motion to dismiss (Dkt. 16), the Parties participated in a formal mediation session with the Honorable Wayne Andersen (Ret.) at JAMS. With Judge Andersen's guidance, the Parties engaged in numerous rounds of discussions regarding their respective claims and defenses; however, both Parties had strong viewpoints regarding the merits of the case, and although they made some progress, were unable to reach a settlement.

E.      On June 4, 2014, after full briefing on the motion to dismiss, the Court denied the motion to dismiss, finding that Defendant's consent and emergency purpose defenses could not be resolved on the pleadings. (Dkt. 21.) Defendant thereafter answered the complaint and raised twenty (20) affirmative defenses. (Dkt. 22.)

F.      Over the next six months, the Parties engaged in substantial class- and merits-related discovery, which included the production of tens of thousands of documents, as well as

the depositions of Plaintiff Grant, three (3) separate corporate representatives of ComEd, and a corporate representative of New Egg Media, LLC d/b/a Agent 511 (the third party company that ComEd engaged to manage the Outage Alert Program). Following the close of discovery on December 4, 2014, the Court directed the Parties to file cross-motions for summary judgment by January 19, 2015 and Plaintiff to file his motion for class certification by February 9, 2015. (Dkt. 35.)

      G.     In the weeks leading up to the January 19, 2015 dispositive motions deadline, the Parties—at Judge Andersen's suggestion—began revisiting the possibility of settlement, and jointly moved to extend the dispositive motions deadline to allow an opportunity to fully explore resolution. Although the Parties, which Judge Andersen's assistance, made significant progress toward a class-wide settlement, they were still unable to reach a settlement, but decided that a second mediation was warranted.

      H.     On February 19, 2015, the Parties participated in a second in-person mediation with Judge Andersen at JAMS. After another full day of mediation presided over by Judge Andersen, and additional rounds of negotiations, the Parties ultimately agreed on the material terms of this Settlement.

      I.     Plaintiff believes that the alleged violations of the TCPA asserted in the Action have merit, and that he would have ultimately succeeded in obtaining adversarial certification of the proposed Settlement Class under Federal Rule of Civil Procedure 23, and in prevailing on the merits on summary judgment or at trial. Nonetheless, Plaintiff and Class Counsel recognize that Defendant has raised factual and legal defenses in the Action that present a risk that Plaintiff may not prevail and/or that a class might not be certified for trial. Plaintiff and Class Counsel also have taken into account the uncertain outcome and risks of any litigation, especially in complex

3

actions, as well as the difficulty and delay inherent in such litigation. Therefore, Plaintiff believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in this Agreement.

J.      Based on their comprehensive examination and evaluation of the law and facts relating to the matters at issue in the Action, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to resolve the alleged claims of the Settlement Class, and that it is in the best interests of the Settlement Class members to settle the claims raised in the Action pursuant to the terms and conditions set forth in this Agreement.

K.      At all times, Defendant has denied, and continues to deny, any wrongdoing whatsoever.  Specifically, Defendant has denied that the text message at issue violates the TCPA or any other statute or law because the text message at issue provided important information customers needed in order to report outages to ComEd, which was an important part of the two-way Outage Alert Program.  ComEd also contends the text message at issue was made with the consent of its customers and that the message falls within the emergency purpose exemption of the TCPA.  In addition, Defendant maintains that it has meritorious defenses to class certification and to the claims alleged in the Action and is prepared to vigorously defend against them. Nevertheless, taking into account the uncertainty and risks inherent in any litigation, Defendant has concluded that further defense of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to fully and finally settle and terminate the Action in the manner and upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff Grant, the Settlement Class, and Defendant, by and through their respective counsel,

4

that, subject to final approval of the Court after a hearing or hearings as provided for in this

Settlement Agreement, in consideration of the benefits flowing to the Parties from the Settlement

Agreement set forth herein, that the Action and the Released Claims shall be fully and finally

compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and

subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

1.      **DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified

below:

1.1.    **"Approved Claim"** means a Claim Form submitted by a Settlement Class

Member that is (a) submitted timely and in accordance with the directions on the Claim Form

and the provisions of the Settlement Agreement, (b) fully and truthfully completed and executed,

with all of the information requested in the Claim Form, and (c) physically signed or

electronically verified by the Settlement Class Member.

1.2.    **"Claim Form"** means the document substantially in the form attached hereto as

Exhibit A, as approved by the Court. The Claim Form, to be completed by Settlement Class

Members who wish to file a claim pursuant to this Agreement, shall be available in paper and

electronic format. The Claim Form will require each Settlement Class Member to include only

the Settlement Class Member's (i) name, (ii) current address, (iii) cellular telephone number that

received the Text Message, and (iv) affirmation that the Settlement Class Member received such

Text Message without his or her prior express consent.

1.3.    **"Claims Deadline"** means the date by which all Claim Forms must be

postmarked or submitted on the settlement website established pursuant to Paragraph 4.1 to be

considered timely and shall be set as a date no later than fourteen (14) days before the Final

Approval Hearing. The Claims Deadline shall be clearly set forth in the order granting

Preliminary Approval and in the Final Judgment as well as in the Notice and the Claim Form.

     1.4.    **"Class Counsel"** means Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of

Edelson PC.

     1.5.    **"Class Representative"** means the named Plaintiff in this Action, Michael Grant.

     1.6.    **"Court"** means the United States District Court for the Northern District of

Illinois, the Honorable Gary Feinerman presiding, or any judge who shall succeed him as judge

in this Action.

     1.7.    **"Defendant"** means Commonwealth Edison Company, an Illinois corporation.

     1.8.    **"Defendant's Counsel"** means Seamus C. Duffy and Leslie D. Davis of Drinker

Biddle & Reath LLP.

     1.9.    **"Effective Date"** means the first business day after which all of the events and

conditions specified in Paragraph 9.1 have been met and have occurred.

     1.10.    **"Escrow Account"** means a separate interest-bearing escrow account to be

established by the Settlement Administrator, from which all payments out of the Settlement

Fund, including for Approved Claims made to Settlement Class Members, Settlement

Administration Expenses, any incentive award to the Class Representative, and any Fee Award

to Class Counsel. The Escrow Account shall be established under terms acceptable to Plaintiff

and Defendant at a depository institution insured by the Federal Deposit Insurance Corporation

and that has total assets of at least five hundred million dollars ($500,000,000) and a short-term

deposit rating of at least P-1 (Moody's) or A-1 (Standard & Poor's). The money in the Escrow

Account shall be invested in the following types of accounts and/or instruments and no other:

(i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing the Escrow Account shall be deducted from the Settlement Fund.  Any interest earned on the Escrow Account shall be considered part of the Settlement Fund.

1.11. **"Fee Award***"* means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Class Counsel from the Settlement Fund.

1.12. **"Final"** means one business day following the latest of the following events:  (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving this Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award and/or incentive award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

1.13. **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, and the Court will determine the Fee Award, and the incentive award to the Class Representative.

1.14. **"Final Judgment"** means the Final Judgment and order(s) to be entered by the Court approving the Settlement Agreement and determining the Fee Award, and the incentive award to the Class Representative.

7

1.15.   **"Notice"** means the notice of this proposed Settlement Agreement and Final
Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set
forth in this Agreement, fulfills the requirements of Due Process and Federal Rule of Civil
Procedure 23, and is substantially in the form of Exhibits A, B, C, D and E attached hereto.

1.16.   **"Notice Date**" means the date by which notice is complete, which shall be a date
no later than sixty (60) days after entry of Preliminary Approval.

1.17.   **"Objection/Exclusion Deadline"** means the date by which a written objection to
this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement
Class must be postmarked and/or filed with the Court, which shall be designated as a date no
later than forty-five (45) days after the Notice Date, or such other date as ordered by the Court.

1.18.   **"Parties"** means Plaintiff Michael Grant and the Settlement Class, on the one
hand, and Defendant ComEd, on the other.

1.19.   **"Person"** shall mean, without limitation, any individual, corporation, partnership,
limited partnership, limited liability partnership, limited liability company, association, joint
stock company, estate, legal representative, trust, unincorporated association, and any business or
legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.20.   **"Plaintiffs"** means Michael Grant and the Settlement Class Members,
collectively.

1.21.   **"Preliminary Approval"** means the order preliminarily approving the Settlement
Agreement, certifying the Settlement Class for settlement purposes, and approving the form and
manner of the Notice, which will be submitted to the Court in conjunction with Plaintiff's motion
for preliminary approval of the Agreement.

1.22.   **"Released Claims"** means any and all actual, potential, filed, known or unknown,

8

fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions or failures to act regarding the alleged sending of Text Messages including all claims that were brought or could have been brought in the Action relating to such Text Messages, belonging to any and all Releasing Parties.

1.23. **"Released Parties"** means Defendant ComEd, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, agents, associates, affiliates, divisions, holding companies, employers, employees, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, companies, firms, trusts, and corporations.

1.24. **"Releasing Parties"** means Plaintiffs who do not validly and timely request to be excluded from the proposed settlement (whether or not such Settlement Class Members submit claims) and all of their present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, predecessors-in-interest, successors, assigns, and

legatees. To the extent a Settlement Class Member is not an individual, Releasing Parties also includes all of its present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, and predecessors-in-interest.

1.25. **"Settlement Administration Expenses"** means the expenses reasonably incurred by or on behalf of the Settlement Administrator in administering the Settlement, including any expenses relating to identifying addresses for certain members of the Settlement Class, providing certain aspects of the Notice, processing Claim Forms, and mailing checks for Approved Claims, as well as any expenses reasonably incurred in the sending of notice to the relevant governmental agencies pursuant to the Class Action Fairness Act of 2005 (28 U.S.C. § 1715) ("CAFA"), with all such expenses to be paid from the Settlement Fund.

1.26. **"Settlement Administrator"** means Heffler Claims Group, LLC, selected by the Parties and approved by the Court, that shall provide certain aspects of the Notice to the Settlement Class, creation and hosting of the Settlement Website, and process and pay Approved Claims submitted by Settlement Class Members as set forth in this Agreement.

1.27. **"Settlement Class"** means all individuals in the United States who were sent the Text Message on their cellular phone without their consent. Excluded from the Settlement Class are (1) any Judge, Magistrate Judge, or mediator presiding over this action and members of their families, (2) the Defendant, Defendant's parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers or directors, (3) Persons who properly execute and file a timely request for exclusion from the class, and (4) the legal representatives, successors or assigns of any such excluded persons.

1.28. **"Settlement Class Member"** means a Person who falls within the definition of

the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

1.29.    **"Settlement Fund"** means the non-reversionary cash fund that shall be established by Defendant in the total amount of Four Million and Nine Hundred and Fifty Thousand Dollars ($4,950,000.00) to be deposited into the Escrow Account, plus all interest earned thereon. From the Settlement Fund, the Settlement Administrator shall pay all Approved Claims made by Settlement Class Members, Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings.  The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement. In no event shall Defendant's total monetary obligation with respect to this Agreement exceed or be less than Four Million and Nine Hundred and Fifty Thousand Dollars ($4,950,000.00), plus the interest earned on such sum.

1.30.    **"Text Message"** means or refers to the following text message that was the subject of the Action: "You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit ComEd.com/text for details. T&C:agent511/tandc. STOP to unsubscribe."

1.31.    **"Unknown Claims"** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the

Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived

and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of

§ 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have,

waived any and all provisions, rights and benefits conferred by any law of any state or territory

of the United States, or principle of common law, or the law of any jurisdiction outside of the

United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code.

The Releasing Parties acknowledge that they may discover facts in addition to or different from

those that they now know or believe to be true with respect to the subject matter of this release,

but that it is their intention to finally and forever settle and release the Released Claims,

notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

    1.32.    ***"Website Notice"*** means the legal notice of the terms of this Settlement

Agreement, as approved by Class Counsel, Defendant's Counsel, and the Court, to be provided

to Settlement Class Members on a website to be hosted by the Settlement Administrator (as

further provided for in Section 4.2(e) below).  The Website Notice shall be substantially similar

to the form attached hereto as Exhibit E.

**2.**      **SETTLEMENT RELIEF.**

    2.1.    **Payments to Settlement Class Members.**

        (a)    Defendant shall establish the Settlement Fund within thirty (30) days after

Preliminary Approval.

        (b)    Settlement Class Members shall have until the Claims Deadline to submit

a Claim Form. Each Settlement Class Member with an Approved Claim shall be entitled to a *pro rata* portion of the Settlement Fund by check after deducting the Settlement Administration Expenses, any Fee Award, and any incentive award.

(c)     Within sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Fund all Approved Claims by check..

(d)     All cash payments issued to Settlement Class Members via check will state on the face of the check that the check will expire and become null and void unless cashed within ninety (90) days after the date of issuance.

(e)     All un-cashed checks issued to Settlement Class Members in accordance with this Agreement shall be directed to the Chicago Lawyers' Committee for Civil Rights Under Law, Inc., to be earmarked for the Settlement Assistance Project.

2.2.     **Prospective Relief:** Within one (1) year of the Effective Date, Defendant agrees that it will provide training concerning TCPA compliance to its key managers responsible for customer communications.

**3.     RELEASE**

3.1     The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

3.2     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against each and every one of the Released Parties.

**4.     NOTICE TO THE CLASS.**

13

4.1.    The Notice shall include:

(a)    *Class List*. Upon execution of this Settlement Agreement, Defendant shall produce to the Settlement Administrator the list of all names, addresses, email addresses, and cellular phone numbers of the members of the Settlement Class (the "Class List"). This Class List shall identify the name, last known address, and cellular phone number of all Persons in the Settlement Class who are no longer ComEd customers. The Settlement Administrator shall use reasonable commercial services to determine current U.S. Mail addresses for former ComEd customers in the Settlement Class.

(b)    *E-mail Notice For Current and Former Customers.* No later than the Notice Date, the Settlement Administrator shall send notice via email substantially in the form attached as Exhibit B, along with an electronic link to the Claim Form to all current and former customers in the Settlement Class for whom a valid email address is available from Defendant's records.

(c)    *Bill Insert Notice For Current Customers.* No later than the Notice Date, Defendant will include notice substantially in the form attached as Exhibit C and a Claim Form along with bill for electric services mailed to the Settlement Class who are current customers of ComEd and who receive paper billing statements.

(d)    *Postcard Notice for Former Customers*. No later than the Notice Date, the Settlement Administrator shall send notice substantially in the form attached as Exhibit D and a postcard Claim Form with return postage prepaid along via First Class U.S. Mail to members of the Settlement Class who are former ComEd customers and whose addresses are reasonably identifiable by the Settlement Administrator.

(e)    *Settlement Website.* No later than fourteen (14) days after the entry of

14

Preliminary Approval, the Website Notice shall also be provided at ComEdTextSettlement.com which shall be developed and hosted by the Settlement Administrator and shall include the ability to electronically file Claim Forms online. The Website Notice shall be substantially similar to the form attached as Exhibit E.

(f) *CAFA Notice.* Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall cause to be served upon the Attorneys General of each U.S. State in which Settlement Class members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

4.2. The Notice shall advise the Settlement Class of their rights under the Settlement, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or its terms. The Notice shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing, only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making an objection shall file notice of his or her intention to do so and at the same time (a) file copies of such papers he or she proposes to submit at the Final Approval Hearing with the Clerk of the Court, (b) file copies of such papers through the Court's CM/ECF system if the objection is from a Settlement Class Member represented by counsel, and (c) send copies of such papers via mail, hand, or overnight delivery service to both Class Counsel and Defendant's Counsel.

4.3. Any member of the Settlement Class who intends to object to this Settlement Agreement must include his or her name and address, include all arguments, citations, and evidence supporting the objection (including copies of any documents relied on), state that he or

15

she is a Settlement Class Member, provide the cellular phone number on which he or she allegedly received the Text Message, and provide a statement whether the objector intends to appear at the Final Approval Hearing, with or without counsel, accompanied by the signature of the objecting Settlement Class Member. Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Paragraph and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

4.4. A member of the Settlement Class may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator postmarked on or before the Objection/Exclusion deadline, which must be personally signed by the Settlement Class Member seeking to be excluded from the Settlement Class, and include his or her name and address, the cellular telephone number on which he or she allegedly received the Text Message, the caption for the Action (i.e., *Grant v. Commonwealth Edison Company*, No. 1:13-cv-08310 (N.D. Ill.)), and a statement that he or she wishes to be excluded from the Settlement Class. A request to be excluded that does not include all of the foregoing information, that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid and the Persons serving such a request shall be deemed to remain Settlement Class Members and shall be bound as Settlement Class Members by this Settlement Agreement, if approved. Any member of the Settlement Class who elects to be

excluded shall not: (1) be bound by any orders or the Final Judgment; (2) be entitled to relief under this Settlement Agreement; (3) gain any rights by virtue of this Settlement Agreement; nor (4) be entitled to object to any aspect of this Settlement Agreement. "Mass" or "class" requests for exclusion shall not be allowed.

## 5.     SETTLEMENT ADMINISTRATION.

5.1.     The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by Notice and processing Claim Forms in a rational, responsive, cost effective and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning any Notice activities it performs, administration and implementation of the Settlement Agreement. Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts paid to Settlement Class Members on account of Approved Claims. Without limiting the foregoing, the Settlement Administrator shall:

(a)     Forward to Defendant's Counsel, with copies to Class Counsel, all documents and other materials received in connection with the administration of the Settlement Agreement within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed per the terms of the Settlement Agreement;

(b) Receive exclusion forms and other requests from the Settlement Class and promptly provide a copy of such requests to Class Counsel and Defendant's Counsel upon receipt. If the Settlement Administrator receives any exclusion forms or other requests from the Settlement Class after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

(c) Provide weekly reports to Class Counsel and Defendant's Counsel, including without limitation, reports regarding the number of Claim Forms received;

(d) Make available for inspection by Class Counsel or Defendant's Counsel the Claim Forms, any documentation submitted in support thereof, and any correspondence received by the Settlement Administrator at any time upon reasonable notice; and

5.2. The Settlement Administrator shall employ reasonable procedures to screen claims for abuse or fraud, including without limitation, by cross-referencing the information provided on the Claim Form against the Class List. To the extent that a Settlement Class Member identifies a cell phone number that does not appear on the Class List, then the Settlement Administrator shall request additional information, which may include documentation, from the Settlement Class Member to demonstrate receipt of the Text Message and validate the claim. The Settlement Administrator shall reject a Claim Form where there is evidence of abuse or fraud. The Settlement Administrator shall also reject a Claim Form that does not contain all requested information necessary to screen the claim for fraud or abuse, after giving the claimant a reasonable opportunity of no greater than twenty-one (21) days to provide any requested missing information.

18

5.3.     Both Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by Settlement Class Members. The Settlement Administrator shall follow any agreed-to decisions of Defendant's Counsel and Class Counsel. To the extent Defendant's Counsel and Class Counsel are not able to agree on the disposition of a challenge, the Honorable Wayne R. Andersen (ret.), or if Judge Andersen is unavailable, a mutually agreed-upon neutral from JAMS, shall timely decide such challenge.

5.4.     In the exercise of their duties outlined in this Agreement, both the Settlement Administrator and Judge Andersen shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

5.5.     The Final Approval Hearing shall be set for a date no less than ninety (90) days after the Notice described in Paragraph 4.1(f) is disseminated.

5.6.     The Settlement Administrator and Class Counsel shall keep the Class List and all personal information obtained therefrom, including the identity, telephone numbers, email addresses, and U.S. mailing addresses of the Settlement Class strictly confidential. The Parties agree that the Class List may not be used for any purpose other than effectuating the terms of this Agreement or the duties or obligations arising hereunder.

## 6.     TERMINATION OF SETTLEMENT.

6.1.     Subject to Paragraph 9 below, the Class Representative, on behalf of the Settlement Class, or Defendant, shall have the right to terminate this Settlement Agreement by providing written notice of the election to do so to all other Parties hereto within ten (10) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this

Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1 of this Agreement, is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. The Defendant shall have the right, but not the obligation, to terminate this Agreement at any time at or prior to the Final Approval Hearing if more than 5,000 members of the Settlement Class request exclusion from the Settlement Class pursuant to Section 4.4.

**7.     PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.**

7.1.     Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement, certification of the Settlement Class for settlement purposes only, appointment of Class Counsel and the Class Representative, and entry of the order granting Preliminary Approval, which shall set a Final Approval Hearing date and approve the Notice and Claim Form for dissemination substantially in the form of Exhibits A,B,C, D, and E attached hereto.

7.2.     At the time of the submission of this Settlement Agreement to the Court as described above, Class Counsel and Defendant's Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

7.3.     After Notice is given, the Parties shall request and obtain from the Court a Final Judgment. The Final Judgment will (among other things):

(a)     find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve this Settlement

Agreement, including all attached exhibits;

     (b)    approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Settlement Agreement according to its terms and conditions; and declare the Settlement Agreement to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members and Releasing Parties;

     (c)    find that the Notice implemented pursuant to the Settlement Agreement (1) constitutes the best practicable notice under the circumstances, (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing, (3) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and the rules of the Court;

     (d)    find that the Class Representative and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

     (e)    dismiss the Action on the merits and with prejudice, without fees or costs to any party except as provided in this Settlement Agreement;

     (f)    incorporate the Release set forth above, make the Release effective as of the Effective Date, and forever discharge the Released Parties as set forth herein;

(g)     permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)     authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all Exhibits to this Agreement) that (1) shall be consistent in all material respects with the Final Judgment, and (2) do not limit the rights of Settlement Class Members; and

(i)     incorporate any other provisions, consistent with the material terms of this Agreement, as the Court deems necessary and just.

## 8.    CLASS COUNSEL'S ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD.

8.1.    Class Counsel will apply to the Court for an award of reasonable attorneys' fees and unreimbursed expenses incurred in the Action as the Fee Award. The amount of the Fee Award shall be determined by the Court based on petition from Class Counsel. The maximum amount of Class Counsel's petition shall be identified in the Notice. Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund to be distributed to Settlement Class Members with Approved Claims.

8.2.    Class Counsel shall be paid the Fee Award, in an amount determined by the Court, from the Settlement Fund within fourteen (14) days after the Effective Date. Payment of the Fee Award shall be made via wire transfer to an account designated by Class Counsel after

22

providing necessary information for electronic transfer.

8.3.    In addition to any payment to which he may be entitled under this Agreement on account of an Approved Claim, and in recognition of the time and effort he expended on behalf of the Settlement Class, subject to the Court's approval, the Class Representative shall be paid from the Settlement Fund an incentive award in the total amount of $5,000.00. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund to be distributed to Settlement Class Members with Approved Claims.

8.4.    The Class Representative shall be paid the incentive award, as determined by the Court, from the Settlement Fund within fourteen (14) days after the Effective Date. Payment of the incentive award to the Class Representative shall be made via check to the Class Representative, such check to be sent care of Class Counsel.

## 9.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.

9.1.    The Effective Date of this Settlement Agreement shall not occur unless and until each and every one of the following events occurs, and shall be the date upon which the last (in time) of the following events occurs:

(a)    This Agreement has been signed by the Parties, Class Counsel and Defendant's Counsel;

(b)    The Court has entered an order granting Preliminary Approval of the Agreement;

(c)    The Court has entered an order finally approving the Settlement Agreement, following notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or

23

a judgment substantially consistent with this Agreement; and

(d)     The Final Judgment has become Final, as defined above, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") to which the Parties have consented, that Alternative Judgment has become Final.

9.2.     If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Settlement Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 9.3, unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all other Parties. Notwithstanding anything herein, the Parties agree that the Court's decision as to the amount of the Fee Award to Class Counsel set forth above or the incentive award to the Class Representative, regardless of the amounts awarded, shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

9.3.     If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1, 9.1, or 9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into and, pursuant to Paragraph 10.4 below, this Agreement shall not be used for any purpose whatsoever against any

24

of the Parties.

**10.    MISCELLANEOUS PROVISIONS.**

10.1    The Parties: (1) acknowledge that it is their intent to consummate this Settlement Agreement; and (2) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking entry of an order granting Preliminary Approval of this Agreement and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

10.2    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

10.3    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully this Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

10.4    Whether the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

25

(a)     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)     is, may be deemed, or shall be used, offered or received against Defendant as, an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)     is, may be deemed, or shall be used, offered or received against Plaintiff or the Settlement Class, or each or any of them as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact alleged by Defendant, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d)     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or settlement may be used in any proceedings as may be necessary to effectuate the provisions of this

26

Agreement. Moreover, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

(e)     is, may be deemed, or shall be construed against Plaintiff and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(f)     is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.5    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.6    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

10.7    All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

10.8    This Agreement and its Exhibits set forth the entire agreement and understanding

of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.9    Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in anyway related to the Action.

10.10    Plaintiff represents and warrants that he has not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that he is fully entitled to release the same.

10.11    Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

10.12    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.13    The Court shall retain jurisdiction with respect to implementation and

28

enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

10.14   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without reference to the conflicts of laws provisions thereof.

10.15   This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arms'-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

10.16   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:

| **If to Plaintiff's Counsel:** | **If to Defendant's Counsel:** |
|---|---|
| Ari J. Scharg | Seamus Duffy |
| EDELSON PC | DRINKER BIDDLE & REATH LLP |
| 350 North LaSalle Street, Suite 1300 | One Logan Square, Ste. 2000 |
| Chicago, Illinois 60654 | Philadelphia, Pennsylvania 19103 |

[SIGNATURES APPEAR ON FOLLOWING PAGE.]

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**MICHAEL GRANT**, individually and on behalf of the Settlement Class,

Dated: _____          By: _____

**EDELSON PC**
Attorneys for Plaintiff Michael Grant

Dated: _____          By: _____
Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
John C. Ochoa

Dated: _____          **COMMONWEALTH EDISON COMPANY.**

By: _____

Its _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant ComEd

Dated: _____          By: _____
Seamus Duffy
Leslie Davis

30

# Exhibit A

**OUTAGE ALERT TEXT MESSAGE SETTLEMENT CLAIM FORM**

First Name

Last Name

Address

City

State

ZIP Code

Cellular Telephone Number that Received the Text Message

(          )          -          .

Complete and sign the following declaration to affirm that you received one or more of the calls at issue in this lawsuit:

I,

(print your full name) submit this declaration that I received a text message from ComEd without my consent at the above cellular telephone number stating that I have been subscribed to ComEd outage alerts.

/          /

M    M          D    D          Y    Y    Y    Y

Signature

# Exhibit B

FROM: OUTAGEALERTTEXTMSGSETTLEMENT@COMED.COM
TO: JOHNQCLASSMEMBER@GMAIL.COM
RE: LEGAL NOTICE OF CLASS ACTION SETTLEMENT

**IF YOU RECEIVED A TEXT MESSAGE FROM COMED ON YOUR CELL PHONE STATING
THAT YOU HAVE BEEN SUBSCRIBED TO COMED'S OUTAGE ALERTS,
A CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

A settlement has been reached in a class action lawsuit against electric utility company **Commonwealth Edison Company** ("ComEd"). The lawsuit alleges that ComEd violated federal law by sending unsolicited text messages to cellular telephones saying consumers were subscribed to ComEd outage alerts. ComEd denies any wrongdoing, and the settlement does not establish that any law has been broken. The lawsuit is called *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310, and is in the U.S. District Court for the Northern District of Illinois.

• **Why Am I Being Contacted?** Our records show you may be a "Settlement Class Member" entitled to payment under the Settlement. Settlement Class Members are all individuals in the United States who received the following text message without consent: "You are now subscribed to ComEd outage alerts. Up to 21 msg/mo. Visit ComEd.com/text for details. T&C:agent511/tandc. STOP to unsubscribe."

• **What Can I Get from the Settlement?** If you're eligible and the Court approves the settlement, you can receive an equal share of a $4.95 million Settlement Fund, after the payment of expenses and fees, in the form of a cash payment. This payment is estimated to be $50, but may be more or less depending on the number of claims filed.

• **How Do I Get My Payment?** Just click here and complete the short and simple Claim Form. More information is available at www.ComEdTextSettlement.com. You can also call [settlement admin phone number] to request a paper copy of the Claim Form. ***All Claim Forms must be received by [claims deadline].***

• **What Are My Options?** You can do nothing, submit a Claim Form, comment on or object to any of the Settlement terms, or exclude yourself from the Settlement. If you do nothing or submit a Claim Form, you won't be able to sue ComEd in a future lawsuit about the claims addressed in the Settlement and you will be bound by the decision of the court. If you exclude yourself, you won't get a payment—but you'll keep your right to sue ComEd on the issues the settlement concerns. You must contact the settlement administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. ***All Requests for Exclusion and Objections must be received by [exclusion/objection deadline].***

• **Do I Have a Lawyer?** Yes. The Court has appointed lawyers from Edelson PC to represent you as "Class Counsel." You will not be charged for these lawyers. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Michael Grant—a class member like you—to represent the Class.

• **When Will the Court Approve the Settlement?** The Court will hold a final approval hearing on [date] at [time] at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, Illinois 60604, Courtroom 2125. You may appear at this hearing, but you do not have to. At the hearing, the Court will hear objections, determine if the Settlement is fair, and consider Class Counsel's request for fees and expenses up to 36% of the Settlement Fund and an incentive award to the class representative. These requests will be posted on the settlement website on [date].

***Visit www.ComEdTextSettlement.com for complete information.***

# Exhibit C

**IF YOU RECEIVED A TEXT MESSAGE FROM COMED ON YOUR CELL PHONE STATING THAT YOU WERE SUBSCRIBED TO OUTAGE ALERTS, A CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

A settlement has been reached in a class action lawsuit against electric utility company *Commonwealth Edison Company* ("ComEd"). The lawsuit alleges that ComEd violated federal law by sending unsolicited text messages to cellular telephones saying consumers were subscribed to ComEd outage alerts. ComEd denies any wrongdoing, and the settlement does not establish that any law has been broken. The lawsuit is called *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310, and is in the U.S. District Court for the Northern District of Illinois.

**Why am I being contacted?** Our records show you may be a "Settlement Class Member" entitled to payment under the Settlement. Settlement Class Members are all individuals in the United States who received following text message without consent: "You are now subscribed to ComEd outage alerts. Up to 21 msg/mo. Visit ComEd.com/text for details. T&C:agent511/tandc. STOP to unsubscribe."

**What can I get from the settlement?** If you're eligible and the Court approves the settlement, you can receive an equal share of a $4.95 million Settlement Fund, after the payment of expenses and fees, in the form of a cash payment. This payment is estimated to be $50, but may be more or less depending on the number of claims filed.

**How do I get my payment?** Just complete the short and simple Claim Form in this envelope or the electronic Claim Form available at www.ComEdTextSettlement.com. *All Claim Forms must be received by [claims deadline].*

**What are my options?** You can do nothing, submit a Claim Form, comment on or object to any part of the settlement terms, or exclude yourself from the settlement. If you do nothing or submit a Claim Form, you won't be able to sue ComEd in a future lawsuit about the claims in the settlement, and you will be bound by the decision of the court. If you exclude yourself, you won't get a payment—but you'll keep your right to sue ComEd on the issues in the settlement. You must contact the settlement administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by [exclusion/objection deadline].*

**Do I have a lawyer?** Yes. The Court has appointed lawyers from Edelson PC to represent you as "Class Counsel." You will not be charged for these lawyers. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Michael Grant—a class member like you—to represent the Class.

**When will the Court approve the settlement?** The Court will hold a hearing on [date] at [time] at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, Illinois 60604, Courtroom 2125. You may appear at this hearing, but you do not have to. At the hearing, the Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses up to 36% of the Settlement Fund and an incentive award. These requests will be posted on the settlement website on [date].

***Visit www.ComEdTextSettlement.com for complete information.***

A Federal Court authorized this notice.
This is <u>not</u> a solicitation from a lawyer.

# Exhibit D

**[4.25 x 6 postcard notice – foldover card with claim form]**

LEGAL NOTICE

*Grant v. Commonwealth Edison Company,*
Case No. 1:13-cv-08310 (N.D. Ill.)

## If you received a text message from ComEd on your cell phone stating that you were subscribed to outage alerts, a class action settlement may affect your rights.

A Federal Court authorized this notice.
You are not being sued.
This is not a solicitation from a lawyer.

*See reverse for details. For complete information, visit www.ComEdText Settlement.com or call [admin phone].*

Outage Alert
Text Message Settlement
[admin address]

First-Class
Mail
US Postage
Paid
Permit #___

<<BARCODE>>
Postal Service: Please do not mark barcode.

<<FIRST>><<LAST>>
<<CO>>
<<ADDR1>><<ADDR2>>
<<CITY>><<ST>><<ZIP>>
<<COUNTRY>>

---

A settlement has been reached in a class action lawsuit against electric utility company **Commonwealth Edison Company** ("ComEd"). The lawsuit alleges that ComEd violated federal law by sending unsolicited text messages to cellular telephones saying consumers were subscribed to ComEd outage alerts. ComEd denies any wrongdoing, and the settlement does not establish that any law has been broken. The lawsuit is called *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310, and is in the U.S. District Court for the Northern District of Illinois.

**Why am I being contacted?** Our records show you may be a "Settlement Class Member" entitled to payment under the Settlement. Settlement Class Members are all individuals in the United States who received following text message without consent: "You are now subscribed to ComEd outage alerts. Up to 21 msg/mo. Visit ComEd.com/text for details. T&C:agent511/tandc. STOP to unsubscribe."**What can I get from the settlement?** If you're eligible and the Court approves the settlement, you can receive an equal share of a $4.95 million Settlement Fund, after the payment of expenses and fees, in the form of a cash payment. This payment is estimated to be $50, but may be more or less depending on the number of claims filed.**How do I get my payment?** Just complete the short and simple Claim Form attached to this postcard, or the electronic Claim Form available at www.ComEdTextSettlement.com. *All Claim Forms must be received by [claims deadline].*

**What are my options?** You can do nothing, submit a Claim Form, comment on or object to any part of the settlement terms, or exclude yourself from the settlement. If you do nothing or submit a Claim Form, you won't be able to sue ComEd in a future lawsuit about the claims in the settlement and you will be bound by the decision of the Court. If you exclude yourself, you won't get a payment—but you'll keep your right to sue ComEd on the issues in the settlement. You must contact the settlement administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by [exclusion/objection deadline].*

**Do I have a lawyer?** Yes. The Court has appointed lawyers from Edelson PC to represent you as "Class Counsel." You will not be charged for these lawyers. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Michael Grant—a class member like you—to represent the Class.

**When will the Court approve the settlement?** The Court will hold a hearing on [date] at [time] at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, Illinois 60604, Courtroom 2125. You may appear at this hearing, but you do not have to. At the hearing, the Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses up to 36% of the Settlement Fund and an incentive award. These requests will be posted on the settlement website on [date].

*Visit www.ComEdTextSettlement.com for complete information.*

**OUTAGE ALERT TEXT MESSAGE SETTLEMENT CLAIM FORM**

First Name

Last Name

Address

City

State

ZIP Code

Cellular Telephone Number that Received the Text Message

(　　　)　-　　　.

Complete and sign the following declaration to affirm that you received one or more of the calls at issue in this lawsuit:

I,

(print your full name) submit this declaration that I received a text message from ComEd without my consent at the above cellular telephone number stating that I have been subscribed to ComEd outage alerts.

Signature

M M / D D / Y Y Y Y

_____
_____
_____

First-Class
Mail
US Postage
Paid
Permit #___

Outage Alert Text
Message Settlement
[admin address]

# Exhibit E

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

*Grant v. Commonwealth Edison Company,* Case No. 1:13-cv-08310

# If you received a text message from ComEd on your cell phone stating that you were subscribed to outage alerts, a class action settlement may affect your rights.

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against **Commonwealth Edison Company** ("ComEd" or "Defendant"). The lawsuit alleges that ComEd sent unsolicited text messages to cellular telephones using an automatic telephone dialing system. The text messages stated that consumers were subscribed to ComEd outage alerts.

- You are included in the Settlement if you received a received a text message without your consent from ComEd stating that you have been subscribed to ComEd outage alerts.

- Those included in the Settlement will be eligible to receive an equal share of a $4.95 million settlement fund that ComEd has agreed to establish. Each individual who submits a valid claim will receive a portion of this fund estimated to be $50 after all notice and administration costs, the incentive award, and attorneys' fees have been paid. The amount of the payment may go up or down depending on the number of claims received. ComEd has also agreed that it will provide TCPA training to its key employees who manage customer communications.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to receive a payment. |
| **EXCLUDE YOURSELF** | You will receive no payment, but you will retain any rights you currently have to sue Defendant about the issues in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **ATTEND A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | You will receive no payment under the Settlement and give up your rights to sue the Defendant about the issues in this case |

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be provided only after any issues with the Settlement are resolved. Please be patient.

## BASIC INFORMATION

### 1. What is this notice and why should I read it?

A Court authorized this notice to let you know about a proposed Settlement with the Defendant. You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement. You may be eligible to receive a cash payment as part of the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Gary Feinerman of the U.S. District Court for the Northern District of Illinois is overseeing this class action. The case is called *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310. The person who filed the lawsuit, Michael Grant, is the Plaintiff. The company he sued, ComEd, is the Defendant. You need not live in Illinois to get a payment under the Settlement.

### 2. What is a class action lawsuit?

A class action is a lawsuit in which one or more plaintiffs—in this case, Michael Grant—sue on behalf of a group of people who have similar claims. Together, this group is called a "Class" and consists of "Class Members." In a class action, the court resolves the issues for all class members, except those who exclude themselves from the class. After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement and recognized it as a case that should be treated as a class action for settlement purposes.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

### 3. What is this lawsuit about?

The lawsuit alleges that ComEd sent unsolicited text messages to cellular telephones using an automatic telephone dialing system. The text messages stated that consumers were subscribed to ComEd outage alerts. The lawsuit alleges ComEd violated a federal law called the Telephone Consumer Protection Act because consumers did not agree to receive these text messages and they were not sent about an actual emergency.

ComEd denies these allegations and is entering into the settlement to avoid time-consuming and expensive litigation. The settlement is not an admission of wrongdoing by ComEd. More information about the complaint in the lawsuit and the Defendant's answer can be found in the "Court Documents" section of the settlement website at www.ComEdTextSettlement.com

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or the Defendant should win this case. Instead, both sides agreed to a Settlement. That way, they can avoid the uncertainty and expense of ongoing litigation, and Class Members will get compensation now rather than years later—if ever. Plaintiff Grant and his attorneys ("Class Counsel") believe that the Settlement is in the best interests of the Class Members.

## WHO'S INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am in the Settlement Class?

The Court decided that this Settlement includes a Class of all individuals in the United States to whom ComEd sent the outage alert enrollment text message to their cellular telephones without their consent. The outage alert text message stated:

You are now subscribed to ComEd outage alerts. Up to 21 msg/mo. Visit ComEd.com/text for details. T&C:agent511/tandc. STOP to unsubscribe.

If you meet the above definition, you are a Class Member. Most Class Members will receive an email, bill insert, or postcard summarizing this notice, which will include a claim form. Claim forms can also be submitted electronically at www.ComEdTextSettlement.com.

## THE SETTLEMENT BENEFITS

### 6. What does the Settlement provide?

**Cash Payments to Class Members:** Defendant has agreed to create a $4.95 million Settlement Fund, from which Class Members may claim cash payments. To receive a payment, Class Members must submit a valid claim before the deadline on [claims deadline]. The amount Class Members will receive will depend on the total number of valid claims received, but is estimated to be $50. If the number of valid claims is low, then the amount of individual payments will increase, up to a $500 maximum payment. But if the number of valid claims is high, then the amount of individual payments will decrease.

All un-cashed checks issued to Class Members and any unclaimed money in the Settlement Fund will be automatically equally redistributed to the other claiming Class Members.

**Change In ComEd's Practices:** As part of the Settlement, ComEd has also agreed that it will provide TCPA training to its key employees who manage customer communications.

## HOW TO GET BENEFITS

### 7. How do I make a claim?

If you want to get settlement benefits, you must fill out and submit a valid claim form. A claim form is available on the settlement website (www.ComEdTextSettlement.com) and can be filled out and submitted online. A claim form was also included in your ComEd bill along with a summary of this notice or you may have received a postcard in the mail about the Settlement with a paper claim form attached to it. You can also get a paper claim form by calling [Settlement Admin number]. We encourage you to submit a claim online. It's faster and it's free.

The Claim Form requires you to provide the following information: (1) your name, (2) current address, (3) the cellular telephone number at which you received the text message, and (4) a sworn statement that you received this text message without your consent.

### 8. When will I get my payment?

The hearing to consider the fairness of the Settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the Settlement, eligible Class Members whose claims were approved by the Settlement Administrator will be sent a check in approximately [XX] days. Please be patient. All checks will expire and become void 90 days after they are issued.

## THE LAWYERS REPRESENTING YOU

### 9. Do I have a lawyer in this case?

Yes, the Court has appointed lawyers Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of Edelson PC as the attorneys to represent you and other Class Members. These attorneys are called "Class Counsel." Class Counsel can be reached by calling 1-866-354-3015. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. In addition, the Court appointed Plaintiff Michael Grant to serve as the Class Representative. Like you, he's a Class Member.

## 10. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses of up to 36% of the Settlement Fund. The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel. The Court may award less than the amount requested.

Class Counsel will request a service award (also known as an "incentive" award) for the Class Representative of up to $5,000 from the Settlement Fund for his services as class representative and his efforts in bringing the this case. The Court will make the final decision as to the amount to be paid to the Class Representative. The Court may award less than the amount requested.

Class Counsel will file with the Court and post on the settlement website their request for attorneys' fees and expenses and request for an incentive award to the Class Representative two weeks before the objection deadline of [**date 2 weeks before objection deadline**]. Any money not awarded will stay in the Settlement Fund to pay Class Members.

## YOUR RIGHTS AND OPTIONS

## 11. What happens if I do nothing at all?

If you do nothing, you will receive no payment under the Settlement, you will be in the Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court. Also, unless you exclude yourself, you won't be able to start a lawsuit or be part of any other lawsuit against the Defendant for the claims being resolved by this Settlement.

## 12. What happens if I ask to be excluded?

If you exclude yourself from the Settlement, you can't claim any money under the Settlement. You will keep your right to start your own lawsuit against Defendant for the same legal claims made in this lawsuit. You will not be legally bound by the Court's judgments related to the Class and the Defendant in this class action.

## 13. How do I ask to be excluded?

You can ask to be excluded from the Settlement. To do so, you must send a letter stating that you want to be excluded from the Settlement in *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310 (N.D. Ill.). Your letter must also include your (1) name and address, (2) the cellular telephone number at which you received the text message, (3) a statement that you wish to be excluded from the Class, and (4) your signature. You must mail your exclusion request no later than [**objection / exclusion deadline**] to:

*Grant v. Commonwealth Edison Company* Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

You can't exclude yourself on the phone or by email.

**14. If I don't exclude myself, can I sue the Defendant for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

**15. If I exclude myself, can I get anything from this Settlement?**

No. If you exclude yourself, do not submit a Claim Form to ask for a payment.

**16. How do I object to the Settlement?**

If you do not exclude yourself from the Class, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should deny approval by filing an objection. To object, you must file a letter or brief with the Court stating that you object to the Settlement in *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310 (N.D. Ill.) no later than **[objection / exclusion deadline]**. Your objection should be sent to the United States District Court for the Northern District of Illinois at the following address:

Clerk of Court
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

If you are represented by a lawyer, the lawyer must file your objection through the Court's CM/ECF system. Include your lawyer's contact information in the objection.

The objection must be in writing and include the case name *Grant v. Commonwealth Edison Company*, Case No. 1:13-cv-08310 (N.D. Ill.). Your objection must be personally signed and include the following information: (1) your name and address, (2) all arguments, citations, and evidence supporting your objection, including copies of any documents you rely on, (3) a statement that you are a Class Member, and (4) the cellular telephone number at which you received the text message. If you wish to appear and be heard at the hearing on the fairness of the Settlement, you or your attorney must say so in your written objection.

In addition to filing your objection with the Court, you must send copies of your objection and any supporting documents to both Class Counsel and the Defendant's lawyers at the addresses listed below:

| Class Counsel | Defense Counsel |
| --- | --- |
| Ari J. Scharg | Seamus Duffy |
| EDELSON PC | DRINKER BIDDLE & REATH LLP |
| 350 North LaSalle Street | One Logan Square |
| Suite 1300 | Suite 2000 |
| Chicago, IL 60654 | Philadelphia, Pennsylvania 19103 |

### 17. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

### 18. When and where will the Court hold a hearing on the fairness of the Settlement?

The Court will hold the final fairness hearing at [time] on [date], before the Honorable Gary Feinerman at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604 in Courtroom 2125. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, and adequate, and in the best interests of the class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed Settlement, including those related to the amount requested by Class Counsel for attorneys' fees and expenses and the incentive award to the Class Representative.

**Note:** The date and time of the fairness hearing are subject to change by Court Order. Any changes will be posted at the settlement website, www.ComEdTextSettlement.com or through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov.

### 19. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come to the hearing at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as your written objection was filed or mailed on time and meets the other criteria described in the Settlement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

### 20. May I speak at the hearing?

If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement. If you filed an objection (*see* Question 16 above) and intend to appear at the hearing, you must state your intention to do so in your objection.

## GETTING MORE INFORMATION

### 21. Where can I get additional information?

This notice summarizes the proposed Settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement available at www.ComEdTextSettlement.com, contact Class Counsel at 1-866-354-3015, access the Court docket in this case through the Court's PACER system at https://ecf.ilnd.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT CONTACT THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR CLAIMS PROCESS.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated,<br><br>          *Plaintiff*,<br><br>*v.*<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation,<br><br>          *Defendant*. | Case No. 1:13-cv-8310 |

## DECLARATION OF ARI J. SCHARG

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.       I am an attorney admitted to practice in the United States District Court for the Northern District of Illinois. I am entering this declaration in support of Plaintiff Michael Grant's Motion for Preliminary Approval of Class Action Settlement Agreement. This declaration is based upon my personal knowledge, except where expressly noted otherwise. If called upon to testify to the matters stated herein, I could and would competently do so.

2.       I am a Partner at Edelson PC, which has been retained to represent the named Plaintiff in this matter, Michael Grant ("Grant" or "Plaintiff"), and act as proposed Class Counsel on behalf of the Settlement Class.

***Litigation and Settlement Negotiations***

3.       On November 19, 2013, Plaintiff filed the instant Action alleging that Defendant Commonwealth Edison Corporation. ("ComEd" or "Defendant") violated the Telephone

Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), when it transmitted Text Messages[1] to customers' cellular telephones. (*See* Dkt. 1.)

4. ComEd moved to dismiss Plaintiff's complaint, arguing that (i) Plaintiff consented to receive the Text Message by providing his cellular telephone number to ComEd when registering for new services and (ii) the Text Message fell within the TCPA's "emergency purpose" exception.

5. During the briefing on Defendant's motion, the Parties began to discuss the possibility of resolving the case before additional protracted litigation. Over numerous teleconferences, the Parties talked at length about the substantive issues of the case and their perspectives on how it might be resolved. Eventually, these conversations led to an agreement to formally mediate the case and, on April 2, 2014, the Parties convened their first mediation with the Honorable Wayne R. Anderson (ret.) of JAMS (Chicago).

6. After numerous rounds of discussions regarding the respective claims and defenses, it became clear that both parties held strong and conflicting viewpoints regarding the merits of the case, which prevented them from reaching an early settlement. As such, the parties moved forward with the litigation.

7. After full briefing, the Court denied ComEd's motion to dismiss. Shortly after the Court denied ComEd's motion and ComEd answered Plaintiff's complaint, the Parties began to exchange discovery related to the outage alert program, including how the program was initiated, how ComEd obtained, stored, and maintained individuals' telephone numbers, and how the Text Messages were transmitted.

8. To that end, Plaintiff served written discovery requests on ComEd regarding, *inter*

---

[1] Except as otherwise indicated, all defined terms used in this declaration shall have the same meanings ascribed to them in the Parties' proposed Class Action Settlement Agreement.

*alia*, how it had obtained customers' telephone numbers, how any alleged consent to receive Text Messages had been obtained, how the Text Messages were sent, and how ComEd maintained records of both the phone numbers and any consent to be contacted. After receiving and reviewing the written responses and thousands of pages of document production, Plaintiff deposed three of ComEd's Rule 30(b)(6) designees, Richard Blauw and Kimberly Williams, on November 13, 2014, and Frank Scumacci, on November 18, 2014.

9.     Plaintiff also served third-party discovery on several entities, including New Egg Media LLC d/b/a Agent511, which was the vendor ComEd utilized to facilitate the Text Message transmissions, and mBlox, Inc., the "aggregator" that assisted in the transmission of the Text Messages. Both entities produced documents to Plaintiff, and Plaintiff deposed Agent511's Rule 30(b)(6) corporate designee, Jay Malin, on October 2, 2014.

10.     Defendant also took written discovery on the Plaintiff, and took his deposition on July 15, 2014.

11.     The Parties resumed settlement discussions after the completion of discovery in the weeks leading up to the dispositive motion and class certification deadlines. On February 5, 2015 the Parties agreed to an additional in-person mediation session with Judge Andersen, and on February 19, 2015, after a full day of mediation and additional rounds of arm's-length negotiations, the Parties ultimately agreed on the material terms of the Settlement now before the Court.

***Certification of the Settlement Class is Appropriate.***

12.     It is proposed Class Counsel's position that Rule 23's requisites to certifying the proposed Settlement Class for settlement purposes are satisfied here.

13.     With respect to Rule 23(a)'s numerosity requirement, Defendant's records

indicate that it transmitted the Text Messages to approximately 1.2 million individuals.

14.     As to the adequacy requirement, Plaintiff Grant and proposed Class Counsel have vigorously pursued this Action on behalf of the Settlement Class, and will continue to do so.

15.     As it relates to the adequacy of Grant as class representative, his interest in redressing Defendant's alleged violation of the TCPA is identical to the interests of all other Settlement Class Members. Moreover, Grant has worked alongside proposed Class Counsel throughout the pendency of this Action—reviewing the complaint and other documents, equipping his attorneys with the information needed to pursue his claims, sitting for a day-long deposition, and responding to requests for additional information throughout the settlement process—further confirming his dedication to vigorously representing the interests of the Settlement Class.

16.     Further, proposed Class Counsel are experienced members of the plaintiffs' bar who have built their practice litigating similarly complex consumer class actions, including many under the TCPA. Attached hereto as Exhibit 1 is a true and accurate copy of the Firm Resume of Edelson PC.

17.     Additionally, proposed Class Counsel have devoted substantial resources to the prosecution of this Action—for example, investigating the claims of Grant and the Settlement Class, aggressively pursuing Plaintiff's claims through a motion to dismiss, maintaining an ongoing dialogue with ComEd, conducting two rounds of formal mediation, ultimately reaching a resolution of this Action, performing extensive discovery and engaging in additional settlement discussions to ensure that the settlement is fair and reasonable in light of that discovery—and we will continue to do so throughout the Action's pendency.

***The Proposed Settlement is Well Within the Range of Possible Approval.***

18.     We are also of the opinion that the proposed Settlement is fair, reasonable and adequate and well within the range of possible approval.

19.     We also believe that the result for the Settlement Class is especially beneficial in light of the risks associated with continued litigation of the Action. Even though we are confident that Plaintiff would ultimately prevail on summary judgment and at trial should the case proceed, the risks of further litigation are undoubtedly significant. For example, with respect to ComEd's defense that the Text Messages fall under the emergency purpose exception, evidence demonstrates that ComEd may have a colorable defense given that the Text Messages were a "necessary first step" to alerting customers about power outages in their area. Similarly, ComEd was prepared to seek summary judgment on the issue of prior express consent, given the Class Members had a preexisting relationship with Defendant.

20.     Additionally, ComEd would undoubtedly challenge a motion for class certification, further delaying the possibility of relief to the Settlement Class. If the case proceeded to trial, other roadblocks—such as additional discovery and procurement of expert testimony—would stand between the Settlement Class and ultimate recovery. And in light of the amount at stake and its reputational interests, ComEd is nearly certain to appeal any judgment in favor of the class, thus further delaying recovery.

21.     Finally, we also believe that the procedural posture of this Action further supports preliminary approval. Indeed, this case has now been underway for more than two years, and through contentious litigation—resulting in this Court's denial of ComEd's Motion to Dismiss and the completion of fact discovery—and multiple rounds of settlement talks, the Parties have assembled the information necessary to fully assess the strength of Plaintiff's claims.

22.     For all of these reasons, proposed Class Counsel and Grant firmly believe that both the relief obtained for the Settlement Class through the settlement, as well as the manner in which it was obtained, weigh heavily in favor of a finding that the settlement is fair, reasonable and adequate, and well within the range of approval.

*                         *                         *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of April 2015 at Chicago, Illinois.


/s/  Ari J. Scharg_____
Ari J. Scharg

# Exhibit 1

# EDELSON PC FIRM RESUME

EDELSON PC is a plaintiffs' class action and commercial litigation firm with attorneys in Illinois and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class actions, including privacy suits against comScore, Netflix, Time, Microsoft, and Facebook; numerous Telephone Consumer Protection Act ("TCPA") cases against companies such as Google, Twentieth Century Fox, and Simon & Schuster; class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit; fraudulent marketing cases against software companies such as Symantec; mobile content class actions against all major cellular telephone carriers; the Thomas the Tank Engine lead paint class actions; and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools, and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm.'" (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred, finding that Edelson was "extraordinarily experienced" in "consumer protection class actions generally," including "technology consumer protection class action[s]."

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill. July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (order appointing the firm interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing us the sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]").

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.*, No. 11-cv-5935 PSG, Dkt. 73 at 9 (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

# PRIVACY/DATA LOSS

### *Data Loss/Unauthorized Disclosure of Data*

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Redbox, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing Internet analytics company of improper data collection practices. The court has finally approved a $14 million settlement.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litigation*, No. 11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litig.*, No. 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, No. 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litigation*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, No. 08 CH 00448 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the Internet.

### Telephone Consumer Protection Act

Edelson has been at the forefront of TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 10-cv-05260 (N.D. Ill.): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in $6 million text spam settlement.

- *Woodman v. ADP Dealer Services*, No. 2013 CH 10169 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $7.5 million text spam settlement.

- *Lockett v. Mogreet, Inc.*, No 2013 CH 21352 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $16 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein v. Airit2me, Inc.*, No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

## CONSUMER TECHNOLOGY

### *Fraudulent Software*

In addition to the settlements listed below, EDELSON PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp.*, No. 12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb v. Cleverbridge, Inc.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### *Video Games*

EDELSON PC has litigated cases video-game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, No. 13-cv-01962-MEJ (N.D. Cal.): Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

## MORTGAGE & BANKING

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over

$1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, EDELSON PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### Mobile Content

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton Cnty. Super. Ct., Ga.): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving over 2 dozen cases alleging

the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams v. Motricity, Inc.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (L.A. Super. Ct., Cal.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill.): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 10-cv-02964 (N.D. Ill.): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No. 11-cv-01785 (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763 (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between

$11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill.): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill.): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com*, No. 01-600703 (N.Y. Sup. Ct., N.Y. Cnty.): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United

States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555 (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, No. 99 L 11738 (Cir. Ct. Cook Cnty., Ill.): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and

radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues, and consumer advocacy by his peers, the media, state and federal legislators, academia, and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T, and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank Engine toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity,

professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at the Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at Edelson PC. He presently leads the firm's complex case resolution and appellate practice group, which oversees the firm's class settlements, class notice programs, and briefing on issues of first impression.

Ryan has been appointed class counsel in numerous federal and state class actions nationwide that have resulted in over $100 million dollars in refunds to consumers, including: *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.); *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.); and *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.).

Representative reported decisions include: *Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); *In re Jiffy Lube Int'l Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); and *Kristensen v. Credit Payment Servs.*, No. 2:12-CV-00528-APG, --- F. Supp. 2d ---, 2014 WL 1256035 (D. Nev. Mar. 26, 2014).

Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications. Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Ryan has served as an Adjunct Professor of Law at Chicago-Kent, teaching a third-year seminar on class actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, earned CALI awards for the highest grade in five classes, and was a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

Ryan is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and General Counsel at EDELSON PC. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation. In the class action context, Rafey has extensive experience both prosecuting and defending class actions.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, and has achieved landmark settlements involving the telecom industry worth hundreds of millions of dollars, including nationwide settlements in the cases *Pimental, et al. v. Google, Inc.*, No. 11-cv-2585 (N.D. Cal.); *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Williams v. Motricity, Inc., et al.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook Cnty., Ill.).

Rafey's plaintiff's class action practice also focuses on consumer privacy issues and some of his most notable accomplishments include nationwide settlements reached with companies such as Netflix (*In re Netflix Privacy Litig.*, No. 11-cv-379 (N.D. Cal.)) and RockYou (*Claridge v. RockYou, Inc.*, No. 09-cv-6030 (N.D. Cal.)). Rafey also led the effort to secure adversarial class certification of what is believed to be the largest privacy class action in the history of U.S. jurisprudence in the case of *Dunstan, et al. v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successfully litigated numerous multi-million dollar cases, including several "bet the company" cases. And, with respect to the defense of class action, Rafey's practice focuses mainly on the defense of corporate clients facing wage and hour lawsuits brought under the Fair Labor Standards Act.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. A native of Colorado, Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. *See Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.); *Turner v. Storm8, LLC*, No. 09-cv-05234 (N.D. Cal.); *Standiford v Palm, Inc.*, No. 09-cv-05719-LHK (N.D. Cal.); and *Espinal v. Burger King Corp.*, No. 09-cv-20982 (S.D. Fla.). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d

1165 (N.D. Cal. 2010); and *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated *magna cum laude* from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating *magna cum laude* from the International Institute for the Sociology of Law, located in Oñati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiffs'-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is also the director of EDELSON PC's Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive

relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including *Webb v. Cleverbridge*, No. 11-cv-4141 (N.D. Ill.); *Ledet v. Ascentive*, No. 11-cv-294 (E.D. Penn.); and *Drymon v. CyberDefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.); and was appointed sole-lead class counsel in *Loewy v. Live Nation*, No. 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., *magna cum laude*, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia

was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated *magna cum laude* from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., *cum laude*, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David helps direct a team of attorneys and engineers in investigating and litigating cases involving complex tech fraud and privacy violations. His team's research has led to lawsuits involving the fraudulent development, marketing and sale of computer software, unlawful tracking of consumers through mobile-devices and computers, unlawful collection, storage, and dissemination of consumer data, mobile-device privacy violations, large-scale data breaches, and the Bitcoin industry. On the other side, David also serves as a consultant to a variety of emerging technology companies.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. and M.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at Edelson PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including *Elder v. Pacific Bell Telephone Co*, 205 Cal. App. 4th 841 (2012), where the California Court of Appeal held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Insurance Co*, 289 F.R.D. 292 (N.D. Cal. 2013), a case where the defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated *magna cum laude* from The John Marshall Law School in May 2010 and served as Managing Editor for The John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of The John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Appellate Court, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at Edelson PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN J. RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (Honorable Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., *magna cum laude*, from the Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, *summa cum laude*, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.