**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation,<br><br>    *Defendant*. | Case No. 1:13-cv-8310 |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................................1

II. BACKGROUND..................................................................................................................3

    A. Plaintiff's Allegations ....................................................................................................3

    B. The TCPA .......................................................................................................................4

    C. The Litigation History......................................................................................................5

    D. Reaching the Settlement Agreement ...............................................................................6

III. TERMS OF THE SETTLEMENT.........................................................................................6

    A. Class Definition................................................................................................................6

    B. Monetary Relief...............................................................................................................7

    C. Prospective Relief ...........................................................................................................7

    D. Payment of Notice and Settlement Administrative Expenses.........................................7

    E. Incentive Award for Class Representative ......................................................................8

    F. Payment of Attorneys' Fees and Expenses.....................................................................8

    G. Release of Liability .........................................................................................................8

IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
    SETTLEMENT PURPOSES ................................................................................................8

    A. The Settlement Class is Sufficiently Numerous ............................................................9

    B. Settlement Class Members Share Common Questions of Law and Fact.....................10

    C. Grant's Claims are Typical of the Settlement Class Members' Claims.......................11

    D. Plaintiff and Class Counsel Will Adequately Represent the Settlement Class...........12

    E. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3) ............14

        1. Common Questions of Law and Fact Predominate .........................................14

2.   A Class Action is the Superior Method of Adjudicating This
Controversy ................................................................................................... 15

V.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ............... 16

VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................... 18

A.    The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement,
Favors Preliminary Approval ..................................................................................... 19

B.    The Expected Duration, Complexity, and Expense of Further Litigation Weigh in
Favor of Preliminary Approval ................................................................................ 22

C.    The Opinion of Competent Counsel Supports Preliminary Approval ....................... 23

D.    The Stage of the Proceedings Completed Support Preliminary Approval ................. 24

VII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ....................................... 24

VIII.  CONCLUSION ................................................................................................................ 26

# **TABLE OF AUTHORITIES**

United States Supreme Court Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................8, 9, 14, 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................................24

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012)............................................................4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .........................................................10

United States Circuit Court of Appeals Cases

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) .......18, 19

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008)...........................................................................9

*Donovan v. Estate of Fitzsimmons,* 778 F.2d 298 (7th Cir. 1985)................................................19

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)....................................................................19

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).........................................................................18

*Harper v. Sheriff of Cook Co.,* 581 F.3d 511 (7th Cir. 2009) .........................................................9

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)..................................................................18, 20, 23

*Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481 (7th Cir. 2012) ...................................................10

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ....................................................................10, 11

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997) ......................................................16

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................................15

*Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13 (2d Cir. 2003) ..........................................22

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) .................................................................9

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013) .....................17

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)....................................................................10

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)........................................5, 17

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) ..........................................4

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)................................................10, 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)....................18, 19

*Wong v. Accretive Health, Inc.* 773 F.3d 859 (7th Cir. 2014) ......................................................19

United States District Court Cases

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ...................... *passim*

*CE Design v. Beaty Const., Inc.*, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ..............................13

*Greene v. DirecTV*, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ..................................................21

*G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010)..............10

*Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) ...........................17

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)..................................10

*Holtzman v. Turza*, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009)..................................................12

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) .. *passim*

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
        789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................................23

*In re Capital One TCPA Litig.*, 2015 WL 605203 (N.D. Ill. Feb. 12, 2015)............................2, 20

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-MD-02261, Dkt. 97 (S.D. Cal. 2013) ...2, 20

*In re Northfield Labs., Inc. Sec. Litig.*,
        No. 06-cv-1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012).......................................18, 24

*Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, Dkt. 94 (N.D. Cal. 2012)................2, 20

*Kessler v. Am. Resorts Int'l*, 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .............19

*Kolinek v. Walgreens, Inc.*, No. 13-cv-04806, Dkt. 97 (N.D. Ill. Apr. 3, 2015).......................3, 21

*Kolinek v. Walgreen Co.*, 2014 WL 3056813 (N.D. Ill. July 7, 2014) .........................................21

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012).........................1, 20

*Lozano v. Twentieth Century Fox Film Corp.*,
 No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) ........................................................2, 14, 17, 20

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010)....................4

*Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 (N.D. Ill. 2013) .............................13, 17

*Moreno v. Napolitano*, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014).........................................12

*Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013) ...............12

*Otero v. Dart*, 2014 WL 4344029 (N.D. Ill. Sept. 2, 2014)....................................................12, 15

*Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008).........................................15

*Roberts v. Paypal, Inc.*, 2013 WL 2384242 (N.D. Cal. May 30, 2013) ........................................21

*Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 (N.D. Ill.)..........................................13, 17

*Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014)..................................2, 20

*Ryabyshchuck v. Citibank (S.D.) N.A.*, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) .................21

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*,
 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)......................................................................12

*Samantha Ellison v. Steven Madden Ltd.*, No. 11-cv-5935, Dkt. 73 (C.D. Cal 2013) ............17, 23

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011).........................................23, 24

*Starr v. Chicago Cut Steakhouse, LLC*, 2014 WL 7146061 (N.D. Ill. Dec. 15, 2014) ..................9

*Subedi v. Merch.*, 2010 WL 1978693 (N.D. Ill. May 17, 2010)....................................................15

*Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) ...............2, 20

Statutes

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

28 U.S.C. § 1715 ......................................................................................................................26

47 U.S.C. § 227........................................................................................................................5, 16

Other Authority

*Manual for Complex Litigation* § 21.632 (4th ed. 2004)................................................................8

## I.     INTRODUCTION

Plaintiff Michael Grant ("Plaintiff") respectfully requests that the Court grant preliminary

approval of the Parties' Class Action Settlement Agreement (the "Settlement"). If approved, the

Settlement will resolve the claim that Defendant Commonwealth Edison Company ("ComEd")

violated the Telephone Consumer Protection Act ("TCPA") when it sent an introductory text

message about its "outage alert" program to its customers' cell phones. As discussed herein, the

Settlement—which was reached with the assistance of the Honorable Wayne R. Andersen (Ret.)

of JAMS, and only after completing class and merits discovery—is an excellent result for the

proposed Settlement Class.[1]

Under the terms of the Settlement, Defendant has agreed to establish a $4.95 million non-

reversionary Settlement Fund, which would be used to pay all approved claims, notice and

administration expenses, an incentive award to Plaintiff Grant, and attorneys' fees awarded by

the Court to proposed Class Counsel. In terms of the monetary relief to class members, those

who submit a short claim form will receive a *pro rata* cash award, estimated at $50. And finally,

the Settlement also requires Defendant to provide its employees with TCPA compliance training

to ensure that it does not send any unlawful text messages going forward.

The Settlement's strength is perhaps best demonstrated by comparing it to other TCPA

settlements. In the prototypical TCPA case—where individuals received unsolicited promotional

calls or text messages from companies with which they have no connection or relationship—

class members generally receive between $100 and $200. *See, e.g., Kramer v. Autobytel, Inc., et

al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (providing for a cash payment of $100 to each

---

[1]  Except as otherwise indicated, all defined terms used herein shall have the same meanings
ascribed to them in the Parties' proposed Class Action Settlement Agreement.

class member); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill.

2008) (providing for a cash payment of $150 to each class member); *Lozano v. Twentieth

Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) (providing for a cash payment

of $200 to each class member). In the larger TCPA cases—with many millions of class

members—class members generally receive between $20 to $40. *See In re Capital One TCPA

Litig.*, --- F. Supp. 3d ---, 2015 WL 605203, at *5 (N.D. Ill. Feb. 12, 2015) (finally approving

settlement that provided for cash payment of $34.60 to each claiming class member); *Rose v.

Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014) (estimating cash payment of

$20-$40 to each claiming class member). On the other hand, in "direct relationship" TCPA

cases—where, like here, the recipients of the calls voluntarily provided their cell phone numbers

to the caller at some point in time—the settlements generally result in coupons or relatively small

cash awards. *See Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, Dkt. 94 (N.D. Cal.

2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam

Litig.*, No. 3:11-MD-02261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher, which could

be redeemed for $15 cash after expiration of nine month waiting period).

Here, the instant settlement—which projects to net claiming Settlement Class Members

(all of whom voluntarily provided their cell phone numbers to Defendant) approximately $50

after taking into account anticipated claims rates—outperforms the results achieved in other

"direct relationship" cases and even many of the prototypical "spam" cases. That alone is good

support for the Court granting preliminary approval. But, the Settlement Class had an additional

hurdle in this case which makes the settlement even stronger: unlike in cases described above

where consent was the only real defense, ComEd was also asserting that the text messages at

issue fall within the TCPA's "emergency purpose" exception. Though Plaintiff believes he

would have overcome that defense at summary judgment or trial, he is also mindful that it is an untested area of the law that would ultimately likely be decided by the FCC and/or the appellate courts. Indeed, the only other case where these issues were at play—e.g., both consent and the emergency purpose exception—settled on substantially similar terms, and just recently received the preliminary approval of Judge Kennelly. *Kolinek v. Walgreens, Inc.*, No. 13-cv-04806, Dkt. 97 (N.D. Ill. Apr. 3, 2015) (preliminarily approving settlement that provided for cash payment of approximately $20 to each claiming class member).

In the end, as explained further below, the results achieved for the Settlement Class are well beyond those required to preliminarily approve the proposed Settlement, especially in light of the risks and uncertainties surrounding Defendant's prior express consent and "emergency purpose" defenses. For these reasons, Plaintiff respectfully requests that the Court (1) certify the proposed Settlement Class, (2) appoint him as Class Representative and his counsel as Class Counsel, (3) approve the proposed form and content of the notice to the Settlement Class, (4) grant preliminarily approval to the Settlement, and (5) schedule the final fairness hearing.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Defendant ComEd is the largest electric utility company in Illinois. (Dkt. 1 ["Compl."] ¶ 1.) In January 2012, Defendant created the "Outage Alert" text-messaging program. (*Id.* ¶¶ 2, 15, 25.) One aspect of the Outage Alert program was to send—to customers who voluntarily chose to participate in the program—text message alerts regarding power outages. (*Id.* ¶ 16.) Plaintiff alleges that due to the low number of voluntary enrollments, Defendant decided to unilaterally enroll approximately 1.2 million of its Illinois customers into the program. (*Id.* ¶ 20.) To notify its customers of their enrollment, Plaintiff alleges that Defendant sent the following text message

(the "Text Message") to Plaintiff and the other members of the Settlement Class in or around

November 2014:

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit
> ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe.
> HELP for info.

(*Id.* ¶¶ 21, 26.) The Text Messages were all sent from SMS shortcode "26633." Plaintiff further

alleges that he did not consent to receive this (or any other) text message from Defendant (*id.* ¶¶

3, 20, 21, 23, 34), and that the text message at issue was not sent for an emergency purpose. (*Id.*

¶¶ 21, 24-25.)

### B.     The TCPA

Turning to the relevant law, Congress passed the TCPA in response to "voluminous

consumer complaints," and to prohibit "intrusive nuisance calls." *Mims v. Arrow Fin. Servs.*

*LLC*, 132 S. Ct. 740, 744 (2012); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637,

638 (7th Cir. 2012) (noting that the TCPA was passed to combat the "expense" and "annoyance"

of autodialed calls to consumers' cell phones); *Lozano v. Twentieth Century Fox Film Corp.*, 702

F. Supp. 2d 999, 1011 (N.D. Ill. 2010) (finding that "the TCPA serves a significant government

interest of minimizing the invasion of privacy caused by unsolicited telephone communications

to consumers."). The TCPA applies to traditional phone calls as well as text message calls. As

such, the TCPA provides a means to combat the growing threat to privacy being caused by

automated telemarketing practices, and states that:

> It shall be unlawful for any person within the United States . . . to make any call
> (other than a call made for emergency purposes or made with the prior express
> consent of the called party) using any automatic telephone dialing system. . . .

47 U.S.C. § 227(b)(1)(A)(iii). *Id.* at 1009.

The TCPA applies to traditional phone calls as well as text message calls. *Satterfield v.*

*Simon & Schuster*, *Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). But calls made with the "prior express consent" of the recipient or for "emergency purposes" are exempted. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if the conduct is found to be willful) and provides for injunctive relief prohibiting the further transmission of such messages. 47 U.S.C. § 227(b)(3)(A)-(B).

### C.     The Litigation History

Plaintiff filed this lawsuit on November 19, 2013. (Dkt. 1.) On February 21, 2014, Defendant moved to dismiss Plaintiff's Complaint under Rule 12(b)(6), arguing that (1) Plaintiff consented to receive the Text Message by voluntarily providing his telephone number to ComEd as a primary point of contact, and (2) that the Text Message falls within the TCPA's "emergency purpose" exemption. (*See* Dkt. 14, 15.) On June 4, 2014, the Court denied the motion, finding that it would be more appropriate to consider the issues raised by Defendant after discovery on a full record. (Dkt. 21.)

After Defendant answered the Complaint, (Dkt. 22), the Parties engaged in six months of class and merits discovery. (Declaration of Ari J. Scharg ["Scharg Decl."], attached hereto as Exhibit 2, at ¶¶ 7-10.) During that time, the Parties exchanged thousands of documents. (*Id.* ¶ 8.) Plaintiff also conducted substantial written discovery with third parties Agent511 (ComEd's vendor that assisted in the implementation and sending of the Text Message), and mBlox, Inc. (a company involved in the transmission of the Text Message that maintained records of the transmissions). (*Id.* ¶ 9.) Further, Plaintiff took the depositions of three corporate representatives that Defendant designated under Rule 30(b)(6), and a corporate representative that was similarly designated by Agent511. (*Id.* ¶ 8.) For its part, Defendant conducted substantial written discovery on Plaintiff Grant, and also took his deposition. (*Id.* ¶ 10.)

At the December 4, 2014 status hearing, the Court set a briefing schedule for the Parties' cross-motions for summary judgment (which was later extended by agreement of the Parties), as well as Plaintiff motion for class certification deadline. (Dkt. 35.)

### D. Reaching the Settlement Agreement

Prior to the start of formal discovery, and in the midst of briefing on Defendant's motion to dismiss, the Parties first began to discuss the possibility of settlement. On April 2, 2014, they took part in a formal mediation session with Judge Wayne Andersen of JAMS. (Scharg Decl. ¶ 5.) After numerous rounds of discussions regarding the respective claims and defenses it became apparent that both parties held strong and conflicting viewpoints regarding the case's merits, which prevented them from reaching an early settlement. (*Id.* ¶ 6.) As such, the parties moved forward with the litigation.

The parties resumed settlement discussions after the completion of discovery in the weeks leading up to the dispositive motions deadline. (Scharg Decl. ¶ 11.) On February 5, 2015 the Parties agreed to an additional in-person mediation session with Judge Andersen. (*Id.*) On February 19, 2015, after a full day of mediation and additional rounds of arm's-length negotiations, the Parties ultimately agreed on the material terms of the Settlement now before the Court. (*Id.*)

## III. TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement (which is attached as Exhibit 1) are briefly summarized as follows:

### A. Class Definition

The Settlement defines the "Settlement Class" as all Persons in the United States who were sent the following text message on their cellular phone without consent:

> You are now subscribed to ComEd outage alerts. Up to 21 msgs/mo. Visit
> ComEd.com/text for details. T&C:agent511.com/tandc. STOP to unsubscribe.
> HELP for info.

(Settlement ¶ 1.27). Excluded from the Settlement Class are (1) any Judge, Magistrate Judge, or

mediator presiding over this action and members of their immediate families, (2) the Defendant,

Defendant's parent companies, successors, predecessors, and any entity in which the Defendant

or its parents have a controlling interest and their current or former officers and directors, (3)

Persons who properly execute and file a timely request for exclusion from the class, and (4) the

legal representatives, successors or assigns of any such excluded persons. (*Id.*)

### B. Monetary Relief

Defendant has agreed to establish a $4,950,000.00 non-reversionary Settlement Fund,

from which each member of the Settlement Class who submits a valid claim shall be entitled to a

*pro rata* portion of the Settlement Fund after payment of all settlement administration expenses,

incentive awards to the class representative, and the fee award to class counsel. (*Id.* ¶ 2.1.) Based

on the anticipated claims rates, Plaintiff's counsel estimates that each member of the Settlement

Class who submits a valid claim will receive approximately $50.

### C. Prospective Relief

In addition to the monetary relief to the Settlement Class, Defendant has also agreed that

it will provide TCPA training to its key employees who manage customer communications. (*Id.*

¶ 2.2.)

### D. Payment of Notice and Settlement Administrative Expenses

Defendant has agreed to pay, from the Settlement Fund, the cost of sending the notice set

forth in the Settlement Agreement and any other notice as required by the Court, as well as all

costs attendant with administration of the settlement. (*Id.* ¶ 1.25.)

### E.    Incentive Award for Class Representative

In recognition of Plaintiff's time and effort serving as class representative, class counsel will petition the Court for an incentive award not to exceed $5,000. (*Id.* ¶ 8.3.) Should the Court award an incentive award in an amount less than that requested, the difference will remain in the Settlement Fund. (*Id.*)

### F.    Payment of Attorneys' Fees and Expenses

Proposed class counsel will petition the Court for reasonable attorneys' fees and reimbursement of costs from the Settlement Fund.[2] (*Id.* ¶¶ 1.11, 8.1.) Should the Court award of fees and expenses in an amount less than that requested, the difference will remain in the settlement fund to pay valid claims. (*Id.*)

### G.    Release of Liability

In exchange for the relief described above, Defendant, and each of its related entities and affiliated persons, will receive a full release of all claims related to the transmission of the Text Message to members of the Settlement Class as a result. (*Id.* ¶¶ 1.22, 3.1-3.2.)

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The first step in the process of granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A party seeking class certification must satisfy the factors enumerated in Federal Rule of Civil Procedure 23(a) by demonstrating that (1) the class is so numerous that joinder of all members is

---

[2] For notice purposes, the notice documents shall indicate that proposed Class Counsel have unilaterally agreed to limit their fee petition to 36% of the Settlement Fund, and that their fee petition will be posted to the Settlement Website no later than fourteen (14) days before the objection deadline.

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Harper v. Sheriff of Cook Co.,* 581 F.3d 511, 513 (7th Cir. 2009); *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008).

In addition to satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Harper*, 581 F.3d at 513. In the instant matter, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3). Certification under this provision requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. *See Amchem*, 521 U.S. at 615-16; *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) *cert. denied*, 131 S. Ct. 998 (2011). Ultimately, district courts have broad discretion to determine whether certification of a class action lawsuit is appropriate. *Starr v. Chicago Cut Steakhouse, LLC*, ---F. Supp. 3d---, 2014 WL 7146061, at *7 (N.D. Ill. Dec. 15, 2014).

As described in detail below, the proposed Settlement Class satisfies all of these prerequisites and should therefore be certified.

### A. The Settlement Class is Sufficiently Numerous

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 341 (N.D. Ill. 2010); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014). Although there is no "magic number" at which joinder becomes impracticable, the requirement of numerosity is usually met when the class is comprised of forty or more persons. *See Birchmeier*, 302 F.R.D. at 250. Here,

there is no question that the Settlement Class is sufficiently numerous, because Defendant's

records indicate that it sent the Text Message to approximately 1.2 million individuals, whose

phone numbers, addresses, and email addresses Defendant still has in its records.[3] (Scharg Decl.

¶ 13.) Given both the substantial size and ascertainability of the proposed class, the Settlement

Class satisfies the numerosity requirement.

### B.  Settlement Class Members Share Common Questions of Law and Fact

The second requirement of class certification asks whether there are "questions of law or

fact common to the class" that exist. Fed. R. Civ. P. 23(a)(2); *see also Suchanek v. Sturm Foods,*

*Inc.*, 764 F.3d 750, 755 (7th Cir. 2014). For certification, class members must share "a common

contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2551 (2011); *Birchmeier* 302 F.R.D. at 250. "A common nucleus of operative fact is usually

enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589,

594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Commonality typically exists where a defendant has engaged in standardized conduct towards

members of the proposed class. *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806

(N.D. Ill. 2008).

Here, the proposed Settlement Class satisfies the commonality requirement of Rule 23(a).

Grant alleges, and discovery has confirmed, that Defendant, with the assistance of its vendor

---

[3] Although not explicitly required under Rule 23, a party seeking class certification must also show that the class is "sufficiently definite or ascertainable." *Birchmeier*, 302 F.R.D. at 245 (citing *Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). Ascertainability is met when class members can be identified based on "precise, objective criteria." *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, 2010 WL 744262, at *4 (N.D. Ill. Feb. 25, 2010) (citation omitted). Because Settlement Class membership here is based on straightforward criteria—receipt of an unsolicited text message from ComEd on one's cellular telephone (Settlement ¶ 1.27)—and Defendant has provided a list of all individuals who satisfy such criteria, the ascertainability requirement is satisfied as well.

Agent511, collected the cellular telephone numbers of ComEd customers who had not already enrolled in the outage alert program and sent identical text messages to Plaintiff and the Settlement Class using the same dialing equipment. This standardized conduct raises several issues of fact and law common to the Settlement Class, including: (1) whether that dialing equipment falls within the statutory definition of an "automatic telephone dialing system," (2) whether a customer's provision of a cellular telephone number to ComEd constituted "prior express consent" to receive the Text Message, (3) whether the Text Message falls within the TCPA's emergency purpose exception, and (4) whether ComEd's conduct was willful or knowing. Because the answers to those questions depend solely on Defendant's identical conduct towards every member of the Settlement Class, the Settlement Class's claims will rise and fall on the resolution of the same common questions. *See Suchanek*, 764 F.3d at 757 (finding that the commonality requirement is satisfied when "[plaintiff's] claims and those of the class [he] would like to represent all derive from a single course of conduct by [Defendant]").

### C. Grant's Claims are Typical of the Settlement Class Members' Claims

The third element of Rule 23(a)—typicality—directs courts to focus on whether the plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Birchmeier*, 302 F.R.D. at 251; *In re AT&T*, 270 F.R.D. at 342. Typicality and commonality are closely related. Typicality exists where the claims of the named plaintiff arise from the same event or course of conduct that, in turn, gives rise to the claims of other class members, and where those claims are based on the same legal theory. *Id.* (citing *Keele*, 149 F.3d at 594). Courts routinely find that the typicality requirement is met where a defendant's conduct consisted of sending an unsolicited message by text message or fax in violation of the TCPA. *See, e.g., Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551, at *5 (N.D. Ill. Mar. 13,

2013); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, 2012 WL 6106714, at *4 (N.D.

Ill. Dec. 6, 2012); *Holtzman v. Turza*, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009).

Here, Plaintiff's claims are virtually identical to those of the other Settlement Class

Members. He alleges that he received the Text Message from ComEd in violation of the TCPA.

In the end, Plaintiff and the Settlement Class received the exact same text message, from the

exact same Defendant, that were sent in the exact same manner, and for the exact same reason.

"That is enough for Rule 23(a)(3) purposes." *In re AT&T*, 270 F.R.D. at 330 (citation omitted);

*see also Birchmeier*, 302 F.R.D. at 251 (finding that "because the named plaintiffs received the

same type of call as the other class members, their claims are typical of those of the class.").

Thus, Grant's claims are unquestionably typical of those of the Settlement Class and the pursuit

of his claims will necessarily advance the interests of the absent Settlement Class members.

Typicality is readily satisfied.

### D. Plaintiff and Class Counsel Will Adequately Represent the Settlement Class.

The final Rule 23(a) requirement—adequacy—is satisfied where "the representative

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see

also Otero v. Dart*, 2014 WL 4344029, at *7 (N.D. Ill. Sept. 2, 2014); *Birchmeier*, 302 F.R.D. at

252. There are two components to the adequacy inquiry: "(1) the adequacy of the named

plaintiffs as representatives of the proposed class's myriad members, with their differing and

separate interests, and (2) the adequacy of the proposed class counsel." *Moreno v. Napolitano*,

2014 WL 4911938, at *10 (N.D. Ill. Sept. 30, 2014) (internal citation omitted). As it relates to

the class representative, courts must determine whether his interests in the outcome are in

harmony with the interests of the class members he seeks to represent. *See In re AT&T*, 270

F.R.D. at 343. When it comes to class counsel, it is their experience litigating similar actions and

dedication of time and resources to the case that matters. *See id.* at 344.

Here, both Grant, as proposed class representative, and Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of Edelson PC as proposed Class Counsel, will fairly and adequately represent the interests of the proposed Settlement Class. First, Grant's interest in redressing Defendant's alleged violation of the TCPA is identical to the interests of all other Settlement Class members: they all suffered the same alleged injury when they received the unauthorized text message regarding enrollment in ComEd's automated power outage alert system. (Scharg Decl. ¶ 15.) Thus, Plaintiff Grant's interests are entirely representative of and consistent with the interests of the Settlement Class. *See CE Design v. Beaty Const., Inc.*, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009) (claims of named plaintiff and proposed class were "based upon the same legal theory, *i.e.* violation of the TCPA," where defendant sent unsolicited advertisements to both). Because his interests in obtaining statutorily awarded monetary and prospective relief from ComEd under the TCPA mirrors the interests of the Settlement Class, Plaintiff satisfies the first prong of the adequacy analysis.

In addition, and as explained more fully in Section V below, proposed Class Counsel are experienced members of the plaintiffs' bar that have litigated similarly complex consumer class actions, including many under the TCPA. (*See infra* Section V; Scharg Decl. ¶ 16.) Indeed, Plaintiff's counsel have regularly been found to be adequate representatives in TCPA actions, including several in this District. *See Birchmeier*, 302 F.R.D. at 252 (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 at 5 (N.D. Ill.) (finding that "attorneys [at Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel."); *Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 at 4 (N.D. Ill. 2013) (appointing attorneys at Edelson PC as class counsel);

*Lozano*, No. 09-cv-06344, Dkt. 64 (N.D. Ill.) (same).

Moreover, proposed Class Counsel has devoted substantial resources to the prosecution of this action by, for example, investigating the claims of Grant and the Settlement Class, aggressively pursuing those claims through motion practice, conducting extensive class and merits discovery, participating in two formal mediations, and ultimately reaching a favorable resolution. And they will continue to do so throughout the action's pendency. (Scharg Decl. ¶¶ 8-9, 17.)

Accordingly, since Grant and his counsel have demonstrated their commitment to vigorously representing the Settlement Class and neither has interests antagonistic to the Settlement Class, the adequacy requirement is undoubtedly met.

### E. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).

In addition to the four requirements for certification under Rule 23(a), the proposed Settlement Class also satisfies the two additional requirements imposed under Rule 23(b)(3)—predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3); *see also In re AT&T*, 270 F.R.D. at 334. The purpose of these additional requirements is to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citing Fed. R. Civ. P. 23 advisory committee's notes); *Birchmeier*, 302 F.R.D. at 255. As explained below, the requirements of predominance and superiority are readily met.

### 1. Common Questions of Law and Fact Predominate.

While commonality under Rule 23(a)(2) confirms the presence of common questions of law or fact, the predominance requirement of Rule 23(b)(3) requires that those common questions qualitatively "represent a significant aspect of [the] case." *Messner v. Northshore*

*Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *see also In re AT & T*, 270 F.R.D. at 345. A class is often considered "cohesive" when a defendant has engaged in standardized conduct that is identical toward each class member. *See AT & T*, 270 F.R.D. at 345. And when common evidence can be used to prove a class's claims, the predominance requirement is generally satisfied. *See Messner*, 669 F.3d at 819.

Here, the common factual and legal questions detailed in Section IV.B.—*e.g.*, whether the dialing equipment ComEd used to send the Text Messages to cell phones is an ATDS, whether ComEd obtained valid consent, whether the Text Messages fall within the TCPA's emergency purpose exception, and whether ComEd's conduct was willful or knowing—are the central focus of Plaintiff's and the Settlement Class Members' TCPA claims. Given that the Settlement Class Members all received the same text message, made by the same entities, in the same manner, common questions predominate, and the first requirement of Rule 23(b)(3) is met.

### 2. A Class Action is the Superior Method of Adjudicating This Controversy.

Finally, Rule 23(b)(3) requires that a class action is the superior method of "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(B); *see also Birchmeier*, 320 F.R.D. at 255; *Subedi v. Merch.*, 2010 WL 1978693, at \*6 (N.D. Ill. May 17, 2010). Class treatment is particularly well suited for claims resulting from standardized conduct because it enables the court to "determine the legality of [an] alleged practice and procedure in one proceeding." *Otero*, 2014 WL 4344029, at \*9; *see also Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008). A class action is also superior in cases where individual damages are relatively low, because it allows individuals to aggregate their claims, overcoming

the "problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *See Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997).

Here, a class action is the superior method of resolving the controversy because it allows the court to swiftly resolve Plaintiff's and the class's TCPA claims against ComEd in a single proceeding, generating a uniform result that will apply to all similarly situated persons. Further, a class action is superior because it allows class members to aggregate relatively modest individual claims worth just $500 in statutory damages (or, at most, $1,500 in the case of willful conduct). *See* 47 U.S.C. § 227(b)(3)(C). By comparison to the modest relief available, the cost of litigating TCPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. In addition, individual claims would clog the court with an influx of separate actions, further delaying the possibility of relief and undermining Rule 23's policy of judicial efficiency. *See Birchmeier*, 302 F.R.D. at 255 ("In this case, plaintiffs have alleged that defendants chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims.").

By providing swift resolution of common claims in a way that would not be possible individually, the superiority requirement is satisfied. Because the requirements of Rule 23(a) and 23(b)(3) are satisfied, the proposed Settlement Class should be certified for settlement purposes.

## V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

When certifying a class, Rule 23 requires that a court appoint counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008). In appointing class

counsel, the court must consider (1) the work counsel has done in identifying or investigating the claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

Here, proposed Class Counsel readily satisfies the criteria of Rule 23(g). First, they have devoted—and will continue to devote—a significant amount of time and effort to this litigation, including through their investigation of Plaintiff's allegations, substantive motion practice, extensive written and oral discovery, mediations, and settlement discussions. (Scharg Decl. ¶¶ 8-9, 17.) Second, proposed class counsel has extensive experience litigating class actions of similar size, scope, and complexity to the instant action, and have been appointed class counsel in numerous TCPA class actions, many of them in this District. (*See* Firm Resume of Edelson PC, which is attached as Exhibit A to the Scharg Decl.); *see also Rojas v. CEC*, No. 10-cv-05260 (serving as lead counsel in $20 million text spam settlement); *Lozano v. 20th Century Fox*, No. 09-cv-06344 (serving as lead counsel in $16 million text spam settlement); *Miller v. Red Bull*, No. 12-cv-04961 (serving as lead counsel in $6 million text spam settlement). Edelson PC has developed an in-depth understanding of the TCPA and has successfully litigated emerging issues that continue to redefine its boundaries. *See, e.g.*, *Satterfield*, 569 F.3d 946 (9th Cir. 2009) (securing landmark ruling applying the TCPA to text messages); *Samantha Ellison v. Steven Madden Ltd.*, No. 11-cv-5935, Dkt. 73 at 9 (C.D. Cal 2013) ("[Attorneys at Edelson PC] specialize in litigating consumer class actions and have pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue.").

For these reasons, the Court should appoint Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of Edelson PC as Class Counsel.

## VI.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which involves a well-established two-step process. *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether the proposed settlement falls "within the range of possible approval" "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. And once preliminary is granted, class members are notified of the settlement and the court and parties proceed to the second step—the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test is used to determine whether a proposed settlement is fair, reasonable, and adequate, *Synfuel*. 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). Specifically, the longstanding rule in this Circuit looks to six factors when conducting a fairness determination: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the amount of opposition to the settlement (4) the reaction of the class member to the settlement; (5) the opinion of competent counsel, and (6) the stage of the

proceedings and amount of discovery completed. *Wong v. Accretive Health, Inc*. 773 F.3d 859, 863 (7th Cir. 2014) (collecting cases).[4] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314)).[5]

Here, each factor supports the Settlement, which this Court should find "well within the range of possible approval."

### A. The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement, Favors Preliminary Approval.

The first and most important factor in assessing a settlement's fairness is the strength of the plaintiff's case compared to the settlement offer. *Synfuel*, 463 F.3d at 653. The analysis begins by making a "ball park valuation" of the value of continued litigation to the class, which is considered in light of associated risks of continued protracted litigation. *See In re AT&T*, 270 F.R.D. at 347 (citing *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)). In addition, because a settlement is a compromise, "courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347

---

[4]  The third and forth factors—the amount of opposition to the settlement and the reaction of the class members—are not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT & T*, 270 F.R.D. at 349. Accordingly, they are not considered here.

[5]  In addition to these factors, the Seventh Circuit recently identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723–26 (7th Cir. 2014). None of these warning signs are present here, as the Agreement (1) creates an $4.95 million Settlement Fund, (2) with no funds reverting to ComEd, (3) and with the completion of a short and simple claim form (which requires only basic contact information and the cell phone number at which claimants affirm they received the Text Message), (4) Settlement Class members will receive real and immediate cash as relief. (*See* Agreement, ¶¶ 1.29, 2.1 & Exs. C and D; § III.B, *supra*.)

(quoting *Isby,* 75 F.3d at 1200) (internal quotations omitted).

First, the settlement—in terms of tangible monetary relief and improved customer contact practices going forward—is strong, both compared to other similar TCPA actions and when viewed in light of the risks of protracted litigation. With respect to similar TCPA cases, the monetary relief of $50 per claimant obtained here is consistent with, and in some instances, outperforms, other settlements in this area of the law. As noted above, in the prototypical TCPA case—where individuals allege they received unsolicited telemarketing calls from entities with which they have no connection or relationship—class members generally receive up to $200. *See, e.g., Kramer,* No. 10-cv-2722, Dkt. 148 (providing for a cash payment of $100 to each class member); *Weinstein,* No. 06-cv-00484, Dkt. 93 (providing for a cash payment of $150 to each class member); *Lozano,* No. 09-cv-6344, Dkt. 65 (providing for a cash payment of $200 to each class member). In the larger TCPA cases—with many millions of class members—class members generally receive between $20 to $40. *See In re Capital One TCPA Litig.* 2015 WL 605203, at *5 (finally approving settlement that provided for cash payment of $34.60 to each claiming class member); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014) (estimating cash payment of $20-$40 to each claiming class member). And then there are the "direct relationship" TCPA cases where, like here, the persons called voluntarily provided their cell phone numbers to the caller at some point in time, which generally result in coupon settlements or relatively small cash awards. *See Kazemi*, No. 3:09-cv-05142, Dkt. 94 (providing for a $25 voucher to each class member); *In re Jiffy Lube,* No. 11-md-2261, Dkt. 97 (providing for a $20 voucher, which could be redeemed for $15 cash after expiration of nine month waiting period).

Second, taking into account ComEd's defenses and the relationship between the Parties,

the strength of the settlement becomes even more apparent. On the issue of consent, it is undisputed that Plaintiff and the Settlement Class—all of whom are ComEd customers— voluntarily provided their cell phone numbers directly to ComEd when they registered for electric service. Although Plaintiff is confident that he would ultimately defeat ComEd's contention that this constitutes "prior express consent," *see Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *3 (N.D. Ill. July 7, 2014), he is mindful that certain courts have viewed this issue differently. *See, e.g., Greene v. DirecTV*, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (holding that provision of a cell phone number as a contact number constitutes prior express consent to be called); *Roberts v. Paypal, Inc.*, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.) N.A.*, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012) (same).

Finally, there's no question that whether the Text Messages fall within the "emergency purposes" exception is an issue of first impression. In fact, the only other case Class Counsel is aware of that involved this issue is pending before Judge Kennelly in the case captioned *Kolinek v. Walgreens, Inc.*, No. 13-cv-04806 (N.D. Ill. Apr. 3, 2015), and the case recently settled on similar terms and received preliminary approval. *Id.* (preliminarily approving settlement that provided for cash payment of approximately $20 to each claiming class member). Moreover, the legislative history of the TCPA, coupled with the discovery produced to date, lend at least some support to the defense. In the end, although Plaintiff maintains (and this Court recognized at the June 4, 2014, hearing) that the Text Message on its face does not alert ComEd customers of an emergency, the question of whether the Text Message falls within the exception remains open.

Absent a settlement, ComEd was prepared to seek summary judgment on these two

affirmative defenses. (Scharg Decl. ¶ 19.) And even if Plaintiff cleared those hurdles, ComEd

would undoubtedly challenge a motion for class certification, further delaying the possibility of

relief to the Settlement Class. (*Id.* ¶ 20.) Further still, if the case proceeded to trial, other

roadblocks—such as the procurement of expert testimony—would stand in the way of a recovery

on behalf of the class. And given the amount at stake and its reputational interests, ComEd is

nearly certain to appeal any judgment in favor of the class, thus delaying recovery even further.[6]

(*Id.*)

Despite these substantial uncertainties, the Settlement provides real and immediate cash

relief—entitling each Settlement Class Member to an estimated $50 *pro rata* share of a $4.95

million Settlement Fund. (Agreement ¶ 2.1(b).) The Settlement also requires ComEd to provide

training concerning TCPA compliance to its managers and employees responsible for customer

communications within six (6) months of the Effective Date. (*Id.* ¶ 2.2.) In the end, the relief

afforded by the Settlement is significant—especially in light of the numerous risks of further

litigation—and thus weighs in favor of preliminary approval.

### B. The Expected Duration, Complexity, and Expense of Further Litigation Weigh in Favor of Preliminary Approval.

Preliminary approval is favored in cases such as this one, where "[s]ettlement allows the

class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). If this case were not to

resolve now, the Parties would have each filed their nearly completed cross-motions for

---

[6] Additionally, given the number of Settlement Class members and minimum statutory damage award of $500, due process concerns could likely reduce the judgment ultimately awarded at trial anyway (if the case, in fact, goes to trial). *See Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13, 22 (2d Cir. 2003) ("And it may be that in a sufficiently serious case the due process clause might be invoked . . . to reduce the aggregate damage award.") (citations omitted).

summary judgment and began briefing on class certification. Regardless of the decision on class certification, the losing party would certainly appeal under Rule 23(f). Assuming certification were granted, if neither party is able to obtain complete victory at the summary judgment phase, the case would be headed for an expensive and high-stakes trial. In addition, ComEd would undoubtedly oppose Plaintiff's motion for class certification and appeal any decision in Plaintiff's favor. (Scharg Decl. ¶ 20.) If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class [m]embers with either no in-court recovery or some recovery many years from now." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). The proposed settlement, in contrast, avoids this long and winding path, and instead provides immediate relief to the Settlement Class.

Because the Settlement avoids protracted, costly, and complex litigation, the second factor also weighs in favor of preliminary approval.

### C. The Opinion of Competent Counsel Supports Preliminary Approval.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.* Here, and as described in the declaration of Ari J. Scharg of Edelson PC—which has been recognized as "specialize[d] in litigating consumer class actions and hav[ing] pioneered the application of the TCPA to text-messaging technology," *see Ellison*, No. 11-cv-5935, Dkt. 73 at 9—counsel believes that the instant Settlement is fair, reasonable, and adequate.

Here, and as described in the declaration of Ari J. Scharg, proposed Class Counsel believe that the instant Agreement is fair, reasonable, and adequate for the reasons explained in

23

Section V, *supra*. (Scharg Decl. ¶¶ 18-22.) As the Settlement provides significant relief for individuals who may otherwise be left without a remedy, and is on par with other, similar settlements, this factor weighs in favor of preliminary approval as well.

### D. The Stage of the Proceedings Completed Support Preliminary Approval.

As for the final factor, the instant Settlement was not reached until after the Parties litigated a Rule 12(b)(6) motion to dismiss, completed fact discovery, nearly completed briefing on summary judgment, and began preparing class certification briefing. What's more, the Parties required two separate mediation sessions with Judge Andersen before they could agree on terms. (*See* Scharg Decl. ¶¶ 5, 11.) As such, the parties had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and this factor weighs in favor of the preliminary fairness of the Settlement Agreement. The stage of the proceedings and amount of discovery completed also support preliminary approval.

## VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Due process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"); *Schulte*, 805 F. Supp. 2d at 595. Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also In re Northfield*, 2012 WL 366852, at *7. The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see also In re AT & T*, 270 F.R.D. at 352. This is

24

the case here, where the format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. All forms of notice are attached to the Agreement as Exhibits A-E.

To ensure that the notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have agreed to a comprehensive notice plan. (Agreement ¶¶ 1.26, 4.1.) First, relying on the Settlement Class list in ComEd's possession—which includes the names, addresses, email addresses, and cellular telephone numbers of the Settlement Class— ComEd will provide direct notice to Settlement Class Members through a summary notice and claim form included with the two concurrent electric bills sent to it affected current customers. ComEd will also provide the class list to the Settlement Administrator, who will send a summary notice to Settlement Class members via email, and send postcards to former ComEd customers. (*Id.* ¶ 4.1(a)–(d).) The notice will direct Settlement Class Members to the settlement website, www.ComEdTextSettlement.com, which contains electronic versions of claim forms that can be submitted online, important court documents, and answers to frequently asked questions. (Id. ¶ 4.1(e).

The settlement website, www.ComEdTextSettlement.com, will serve as the central hub for potential Settlement Class Members to gather information on the settlement and, if they qualify for Settlement Class membership, submit the appropriate claim form online. The website will include copies of the notice, claim forms, and other relevant documents and exhibits to the Agreement.[7]

---

[7] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Defendant will cause to be served notice of the Agreement upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials. (*Id.* ¶ 4.1(f).)

Through the emails, bill inserts, and postcards sent directly to Settlement Class members, and a dedicated settlement website—all using straightforward, easy-to-understand language—the proposed notice plan will reach as many members of the Settlement Class as possible under the circumstances. The Court should therefore approve the proposed notice plan.

## VIII.   CONCLUSION.

For the reasons discussed above, Plaintiff Michael Grant respectfully requests that this Court enter an order (1) conditionally certifying the proposed Settlement Class, (2) naming Plaintiff as class representative, (3) appointing Jay Edelson, Rafey S. Balabanian, and Ari J. Scharg of Edelson PC as Class Counsel, (4) granting preliminary approval to the settlement, (5) approving the proposed notice plan, (6) scheduling a final fairness hearing, and (7) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**MICHAEL GRANT**, individually and on behalf of all others similarly situated,

Dated: April 28, 2015

By:     /s/  Ari J. Scharg
        One of Plaintiff's attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on April 28, 2015, I served the above and foregoing ***Motion for and Memorandum in Support of Preliminary Approval of Class Action Settlement***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 28th day of April 2015.

/s/  Ari J. Scharg