IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL GRANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation,<br><br>*Defendant*. | Case No. 1:13-cv-8310<br><br>Hon. Gary Feinerman |

**DECLARATION OF JAY EDELSON IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1. I am an attorney admitted to practice in the United States District Court for the Northern District of Illinois. I am submitting this declaration in support of Plaintiff's Motion and Memorandum of Law in Support of Approval of Attorneys' Fees, Expenses, and Incentive Award. This declaration is based upon my personal knowledge unless otherwise indicated. If called upon to testify as to the matters stated herein, I could and would competently do so.

2. I am the Managing Partner at Edelson PC, which has been retained to represent the named Plaintiff in this matter, Michael Grant ("Grant" or "Plaintiff"). I, along with my colleagues Rafey S. Balabanian and Ari J. Scharg, have been appointed Class Counsel in this matter.

*The Litigation and Settlement History*

3. On November 19, 2013, my firm filed suit against Defendant Commonwealth Edison Company ("Defendant" or "ComEd") on behalf of Plaintiff Grant in the United States

District Court for the Northern District of Illinois.

4. Class Counsel agreed to undertake Plaintiff's case on a contingent fee basis. Class Counsel's retainer agreement with Plaintiff Grant provides for a contingency fee of 33% of any sum recovered.

5. After filing the lawsuit, on February 21, 2014, ComEd filed a motion to dismiss, which Plaintiff opposed. During the briefing on this motion to dismiss, the parties began to discuss the possibility of resolving the case before additional protracted litigation. On April 2, 2014, the parties took part in an in-person formal mediation session with the Honorable Wayne R. Andersen of JAMS (ret.). However, after numerous rounds of discussions regarding the respective claims and defenses, it became apparent that both parties held strong and conflicting viewpoints regarding the case's merits which prevented them from reaching an early settlement. As such, the parties moved forward with litigation.

6. Shortly after the Court denied ComEd's motion to dismiss and ComEd answered Plaintiff's Complaint, the Parties began to exchange discovery. Specifically, Plaintiff served written discovery on ComEd and analyzed the thousands of pages of documents ComEd produced in response.

7. Plaintiff also engaged in extensive third-party discovery with Good Egg Media LLC d/b/a Agent511 ("Agent511") (ComEd's vendor that assisted in the implementation and transmission of the Text Message), mBlox, Inc. (a company involved in the transmission of the Text Message that maintained records of the transmissions), and Neustar, Inc. (the company responsible for the licensing of shortcodes in North America).

8. On November 13th and 18th of 2014, after receiving documents in discovery, Plaintiff deposed three separate Rule 30(b)(6) corporate representatives that ComEd designated

to testify on various topics, such as: (1) the manner in which ComEd contends it obtained prior express consent to transmit the Text Messages, (2) the creation and implementation of the Outage Alert program, (3) the purpose for which the program was created, (4) the manner in which ComEd advertised the program and urged its customers to opt in, (5) ComEd's decision to automatically enroll its customers into the program, (6) the drafting and design of the content of the Text Message, (7) the manner in which ComEd stored or maintained its customers' telephone numbers, (8) the manner in which ComEd allegedly transmitted its customers' telephone numbers to Agent511, (9) the equipment and technology used to transmit the Text Message to Plaintiff and the Class, (10) the business relationship between ComEd and Agent511, and (11) ComEd's policies and procedures relating to compliance with the TCPA.

9. On October 30, 2014, Plaintiff deposed a Rule 30(b)(6) corporate representative that Agent511 designated to testify on various topics, such as (1) the features and components of the mobile messaging services offered by Agent511, (2) the marketing and advertisement of its mobile messaging services to ComEd, (3) its acquisition and provision of shortcode 26633, (4) the features of the mobile messaging services that its provided to ComEd, (5) its alleged acquisition of Plaintiff's and the putative Class's telephone numbers from ComEd, (6) the manner in which its transmitted the Text Message to Plaintiff and the Class, (7) the equipment and technology used to transmit the Text Message to Plaintiff and the Class, (8) the nature of its relationship with ComEd, and (9) its polices and procedures relating to compliance with the TCPA.

10. On July 15, 2014, ComEd took Plaintiff Grant's deposition.

11. In addition to this discovery, Plaintiff consulted with a recognized industry expert regarding the functionality of the dialing equipment used to transmit the text messages at issue.

12. After discovery was complete, Plaintiff drafted and prepared "file ready" versions of Plaintiff's Supplemental Motion for Class Certification and Plaintiff's Motion for Summary Judgment.

13. After the completion of class- and merits-discovery, and on the eve of the class certification and dispositive motions deadline, the parties resumed settlement discussions. On February 5, 2015 the parties agreed to an additional in-person mediation session with Judge Andersen. On February 19, 2015, after another full day of in-person mediation and numerous additional rounds of arms'-length negotiations by phone moderated by Judge Andersen, the Parties ultimately agreed on the principal terms of the Settlement.

14. Thereafter, the parties negotiated the ancillary terms of the deal, and then exchanged several drafts of the settlement agreement and notice documents until they reached a final agreement on all terms and executed the Settlement Agreement on April 29, 2015.

15. After the Settlement was executed, Class Counsel prepared and filed Plaintiff's Motion for Preliminary Approval of the Class Action Settlement and obtained preliminary approval. Since that time, Class Counsel has worked in tandem with the Court-approved Settlement Administrator, Heffler Claims Group, LLC ("Heffler") to ensure that the notice plan is effectuated and to monitor developments in real time.

16. The cost of implementing the notice plan for the instant Settlement is capped at $350,000.

17. In addition to the substantial work already performed on behalf of the class, Plaintiff and Class Counsel must still draft their final approval papers, prepare for the final fairness hearing, communicate with class members about the Settlement, and continue working closely with Heffler to supervise the settlement administration.

18. Indeed, now that the class has been notified of the Settlement, Class Counsel have spoken with scores of class members to answer questions they have regarding the settlement and to assist with claim form submissions.

19. Based on the current number and projected rate of claims through the end of the claims period, Class Counsel reasonably anticipate that each claiming class member will receive—at a minimum—the full $50 cash payment that was estimated at preliminary approval.

***The Risks Attendant to this Litigation***

20. Class Counsel faced risks in this litigation, including that ComEd could establish a consent defense. It is undisputed that Plaintiff and the class members all voluntarily provided their cell phone numbers directly to ComEd when they registered for electric service.

21. In addition, Class Counsel faced even more risk with respect to the issue of whether the Text Message fell within the TCPA's "emergency purpose" exception—an issue of first impression. The legislative history of the TCPA, coupled with the discovery produced to date, lends at least some support to the defense.

22. Although Plaintiff maintains (and this Court recognized at the June 4, 2014, hearing, (dkt. 21)) that the Text Message on its face does not alert ComEd customers of an emergency, the question of whether the Text Message falls within the exception remains open. Both parties were preparing to move for summary judgment on this issue, and to the extent that ComEd prevailed on this issue, the class would have recovered nothing.

23. These two issues—when in most TCPA cases the only real issue is consent—made this case inherently riskier than a typical TCPA case, and lends further support to an enhanced fee award.

24. Additionally, if the case proceeded to trial, other roadblocks—such as additional

discovery and procurement of expert testimony—would stand in the way of ultimate recovery. And, of course, given the amount at stake, the losing party would likely appeal, which would add yet another layer of delay to the already uncertain outcome.

***Plaintiff Grant's Efforts in the Litigation***

25. I believe that Mr. Grant, as Class Representative, dutifully represented the interests of the class in this case.

26. Throughout the litigation process, Mr. Grant made clear that he understood that serving as a named plaintiff and putative class representative carried significant responsibilities, and in that role, he would be required to pursue the action not only on his own behalf, but, more importantly, on behalf of the putative class he sought to represent.

27. Grant has worked alongside Class Counsel and actively engaged in every stage of the litigation—reviewing the complaint and other documents, equipping Class Counsel with the information needed to pursue his (and the class's) claims, sitting for a day-long deposition, and responding to requests for additional information throughout the settlement process.

28. Were it not for Mr. Grant's efforts and contributions to the litigation, the class would not have obtained the substantial benefit conferred by the settlement.

       *       *       *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of July at Chicago, Illinois.

                /s/ Jay Edelson